## JOHN A. McDONALD *v.* L. J. HAUGHTON.

Courts of justice not only redress fraud, but seek to redress fraud by removing temptation. Therefore Presidents and Directors of Railroad Companies are not allowed to buy up and speculate upon claims against such companies—such contracts being in every respect against good morals, and consequently against public policy.

CIVIL ACTION, tried before his Honor, *Judge Tourgee*, at the Fall Term, 1873, of CHATHAM Superior Court.

In his complaint, the defendant alleges, that the defendant having a claim against the Western Railroad Company, amounting to $2,715.25, assigned it to him by the following instrument:

" January 21st, 1870.

I hereby transfer my claim against the Western R. R. Co., to John A. McDonald in consideration of his note for twenty-five hundred dollars; if said note is not paid by the 25th of February next, then the above to be null and void and of no effect.

(Signed,)     L. J. HAUHGTON."

The execution of this assignment was admitted by defendant. It was also admitted, that the defendant was the owner of a claim against said road for $2,715, with interest from Feb. 1, 1864, and that the plaintiff, from 12th November, 1869, to April, 1871, was a director in said Railroad Company.

The defendant, in his answer principally relies upon the facts, that the contract to pay the plaintiff the excess over $2,500, (the real amount involved in this action,) was without consideration; and that said contract, with a director of the company, was against public policy; and that the assignment was obtained from him by the false and fraudulent representations of the plaintiff himself.

For the plaintiff, the Secretary of the Company stated, (reading from the records of the Company,) that on 13th Nov., 1869, the plaintiff being present in the meeting, a resolution was adopted, appointing T. A. Byrnes, J. W. Hopkins and T. S. Lutterloh, a committee to investigate the claim of the defendant and others, held by them against the company,—the committee to report at the next meeting; that this committee reported the 6th of January, 1870, in favor of paying the claim of defendant, to-wit: $2,715, with interest from 1st February, 1864, the consideration of which report was postponed, until the meeting to be held in Raleigh on 1st February, 1870, when it was concurred in, (plaintiff being present) and the amount, including interest, ordered to be paid; that the books show that the amount was placed to the credit of the defendant.

The plaintiff, as a witness, stated, that in the early part of

February, 1870, he had a conversation with defendant, in Pittsboro', in which he asked defendant, if he had heard that his claim against the Western Railroad Company, had been allowed; defendant stated that he had; that after this, he, the plaintiff, met the defendant in Fayetteville, sometime previous to 25th of February, 1870, and remarked to him: "I suppose you have received your money from the company;" that defendant replied, "I have got a part."

Upon his cross-examination, the plaintiff stated that he was not certain, that this conversation took place previous to the 25th of February, but it was his impression, that it did. That when the defendant gave him the assignment, hereinbefore set out, he, the plaintiff gave him his note for $2,500, due 25th February, 1870, and that the only conditions of the contract, were those expressed in the assignment.

The defendant, as a witness in his own behalf, testified, that the amount of his claim against the company, was paid him on the 18th March, 1870, at the banking-house of Jones & Utterloh, in Fayetteville; that he received the money from the bank, and was certain as to the date, from the entry in his pass-book; and that the amount paid him was $3,715, the same being principal and interest of his claim. That the plaintiff was not present, nor has he ever received one dollar from the plaintiff.

The defendant further stated, that at the time he gave the assignment to the plaintiff, the plaintiff gave him his note for $2,500, and that the note, by its express terms, was to be null and and void, if not paid on or before the 25th of Feb. 1870, and that at the time he took the plaintiff's note conditioned as above, the plaintiff was notoriously insolvent, and has so continued ever since. That shortly after the 25th of Feb., 1870, he put plaintiff's note in his pocket, and went to Pittsboro' for the purpose of handing it to plaintiff; that he did not see him, and the note with other papers was lost; that he had diligently searched for it, as he relied upon the condition contained in the same, for a part of his defence set out in his answer, and

had therein offered to indemnify the plaintiff from any damage or loss he might sustain on account of such loss ; that after the day of payment, the 25th of February passed, he considered the note of no value; that he had received a notice from the plaintiff to produce it, &c.

Defendant, then, for the purpose of showing, that the contract (or assignment) made with plaintiff, was against public policy and fraudulent, offered to prove by himself, the following facts :

That on the 19th January, 1870, the plaintiff and himself being in the city of Raleigh, the plaintiff came to his boarding house, and asked him what he was going to do with his, (defendant's) railroad claim ; that he, (the defendant) replied, " if he did not get his money very soon, he intended to sue on it ;" that plaintiff remarked, " he hoped defendant would not sue the company ;" that he again stated to plaintiff, he should certainly sue if the money was not paid, and that he had been advised by his lawyers to pursue this course. The plaintiff thought the matter could be compromised, and upon being asked how, replied, that he thought he could get $2,500 for it in a short time. That he (the defendant) stated to plaintiff, he would not take $2,500, as the principal itself, without interest, was $2,715, to which plaintiff said, " that I could not possibly get the interest, the Board of Directors were determined not to pay interest on any claim;" that to this, he, (the defendant) replied, " he thought it strange, that the Board should pay the principal and refuse to pay interest," and asked the plaintiff what would become of the $215, if the proposition to receive $2,500 was accepted ? Plaintiff replied, " well you will have to give that to Byrnes, who was Chairman of auditing committee, to get him to pass upon your claim." Defendant said he thought it strange the Board would keep a man in office who would not pass a just claim unless he was paid for it, and that as the plaintiff helped to put him into office, he ought to help to put him out. To this, plaintiff said, " You know how it is," and hoped that he would take the $2,500, saying that, defend-

ant could lose only $215, which he had rather pay, than for the company to be sued.

On the 20th, the next day, this conversation, in substance was repeated, the plaintiff coming to defendant and urging him to accept his proposition; that defendant stated to him, that as you (the plaintiff) "assure me, the Directors have determined to allow no interest, and you are a director, and as I am in need of money, I will take for my claim $2,500, *provided* it was paid by the 25th of February, 1870," and thereupon the assignment was made and the note of plaintiff drawn up and given to defendant.

The evidence (of defendant in relation to what passed at the time of executing the assignment and note,) was rejected by the Court, upon the ground, that this was a matter between the company and the plaintiff, and was not against public policy. Defendant then offered the same evidence, for the purpose of proving, false and fraudulent representations on part of the plaintiff of a fact, peculiarly within his, the plaintiff's, knowledge, and constituting a material inducement to making the contract, viz: that the Directors would not allow interest, &c. The evidence was again rejected by the Court, on the ground, that there was no allegation of fraud in the answer, to support the introduction of such testimony.

To both of which rulings of his Honor, defendant excepted.

Defendant then proved by one of the firm, of the banking-house of Jones & Lutterloh, that he was paid his debt against the Railroad Company, on the 18th of March, 1870, out of the funds of the bank, or the private funds of Jones. Plaintiff objected to the witness stating, who paid the money, as the defendant, in his answer, had alleged that it was paid by an officer of the company. The objection was sustained, and the evidence upon that point, ruled out. Defendant again excepted.

Among several instructions to the jury, asked of the Court by the defendant, which are not pertinent to the point upon which the case was determined in this Court,

and are not considered in the opinion of the Chief Justice, the defendant asked his Honor on the trial, to charge the jury:

5th. That the contract between the plaintiff and defendant was void, against public policy, and that the plaintiff could not recover.

This instruction was refused, and his Honor charged, that the contract between the plaintiff and the defendant, must be gathered from the two papers,—the assignment and the note; that if they found the terms of the contract, to be as stated by defendant, then time was of the essence of the contract, and plaintiff could not recover, unless it was proved, that the plaintiff, had either himself paid, or the Company had paid off the note for $2,500, on or before the 25th of February, 1870. And by consent, his Honor submitted, the following issue in writing to the jury, as covering all the case, not otherwise admitted, or previously ruled upon.

Has the plaintiff paid the defendant, the consideration mentioned in the instrument sued upon?

The jury found the issue in the affirmative, in favor of the plaintiff.

Motion by defendant for a new trial; motion refused. Judgment for plaintiff, and appeal by defendant.

*Haughton* and *Manning*, for appellant.
*Batchelor, Edwards & Batchelor* and *Headen*, contra.

PEARSON, C. J.    The defendant offered to prove that he had claims against the Railroad Company (in round numbers) of $2,700 for work done; that he had been pressing this claim upon the directors, from year to year, since 1864, and was put off on one pretext or another; that in January, 1870, when his claim, including interest, amounted to $3,700, the plaintiff, who was one of the directors, offered him $2,500, for his claim, saying that Byrnes, and others of the directors, were determined not to allow interest, whereupon the defendant agreed to let plaintiff have his claim for $2,500.    Soon

thereafter an order allowing his claim was passed by the directors and he was paid the whole amount, $3,700. This action is brought to recover the excess of the amount received by the defendant upon his claim, over the sum of $2,500. His Honor rejected this evidence, on the ground that " this was a matter between the Company and the plaintiff, and not against public policy.

There is error.

The plaintiff sues for $1,200. What has he paid for it? Not one cent. If the claim of the defendant was fair, the plaintiff, as a director, ought to have allowed it; if it was dishonest, it ought to have been rejected ; but what has the plaintiff done to earn $1,200? " there is the rub." He has used his influence to have a claim allowed and paid by the board of directors, and now asks to have judgment for one-third of the amount, because the defendant had agreed to let him have all that was allowed upon the claim over and above $2,500 " for his influence in getting the claim allowed and paid."

Whether he bought up Byrnes by paying him his price, or is seeking to appropriate the entire $1,200 to himself, the transaction is in every point of view against good morals, and consequently " against public policy," and not fit to be enforced by a Court of justice. The doctrine rests on the principle that Courts not only redress fraud, but seek to prevent it, by removing temptation. A trustee or administrator is not allowed to buy at his own sale. Why? Because he would be led into temptation to underrate the value of the property, or to take advantage in some other way.

If an executor or administrator takes up a claim against the estate for less than the amount due on settlement, he is allowed only the sum actually paid. Why? Because otherwise there would be temptation to misrepresent the state of the assets, and put difficulties in the way so as to force creditors to submit to loss.

On this principle Presidents and directors of railroad companies are not allowed to buy up and speculate upon claims

against the Company. Why? Because there would be temptation to misrepresent the creditor of the company, to make false statements as to the note in regard to interest, and to put off a claimant under one pretext or another, (as the defendant offered to prove in this instance,) until he is harried down and agrees to accept two-thirds of his debt, and let "a director" have the other third.

Had the plaintiff openly and above board, as a purchaser, received the amount of the claim, it would have been difficult for the defendant to make him pay more than the $2,500, for which he held the note. But the plaintiff did not see proper to avow himself as a purchaser, probably, because then the profit of the speculation would have inured to the benefit of the company, or other directors might have insisted upon having a share of the spoils. As the money has thus got into the hands of the defendant, there is no principle on which a Court of justice can aid the plaintiff, in his attempt to recover one third of it.

A director, for the purpose of speculation, buys a claim against the company, or rather he stipulates that he is to have all over a sum certain; provided the claim is allowed and paid in a given time; so he is made a judge in his own case, and "is led into temptation."

That such "actings and doings" on the part of Presidents and directors of railroad companies violate good morals, and are against public policy is a question which we will not discuss.

His Honor took the narrow view, "the matter is one between the director and the company." Not so; the matter is one between the honest and dishonest portions of the body politic. This, of course, involves a question of public policy; and the Courts will not enforce the performance of a contract against good morals.

PER CURIAM.　　　　　　　　　　　　　　*Venire de novo.*