SCHOOL DISTRICT No. 39, IN BROWN COUNTY, v. THEODORE F. SULLIVAN *et al.*

SCHOOL DISTRICT—*Void Contract*—*Ratification.* A contract for building a school-house, void because made only by one member of the school board, may be ratified and made binding by the action of the school district in completing the building left unfinished by an absconding contractor; by furnishing the same with seats, desks, and other necessary school-house furniture; by occupying the same for school purposes, and by insuring the same.

*Error from Brown District Court.*

ACTION by *Theodore F. Sullivan* and others against *School District No. 39*, Brown county, to recover for lumber furnished for a school-house. On a judgment for plaintiffs, at the November term, 1888, defendant brings error.

*W. D. Webb*, and *Grant W. Harrington*, for plaintiff in error.

*James Falloon*, for defendants in error.

Opinion by SIMPSON, C.: The material facts in this case can be found stated in the opinion of Mr. Justice VALENTINE,

in 39 Kas. 347, delivered when the case was first brought to this court. When the case went back to the district court of Brown county it was tried by a jury, and a general verdict for the defendants in error was returned for $634.52. The jury also returned the following answers to special questions of fact submitted to them:

"1. Did the defendant school district, or any of its officers, enter into a contract for the erection of a school-house on the land described in the petition with Hiram Eley? Ans. Yes.

"2. Was that contract expressed or implied? A. Implied.

"3. What was Hiram Eley to receive for the building of that school-house, furnishing all the material? A. $838.

"4. Was the fact known to each member of the board that the defendant Hiram Eley was constructing this school-house? A. Yes."

"6. Was the fact that Hiram Eley was building a school-house for the defendant school district, under a contract and agreement with C. A. Sawyer, treasurer of the defendant school district, generally known in that school district? A. Yes.

"7. When did he commence the work of erecting the school-house? A. On or about November 1, 1883.

"8. When did he cease work, and did he abscond? A. He ceased work November 22, 1883; absconded between 22d and 24th of November, 1883.

"9. How far was the school-house completed when he absconded? A. It was ready for plastering.

"10. At the time of the arrangement between Eley and any member of the school board, did the board act in concert? A. No.

"11. If Eley absconded, how long did the school-house remain unoccupied and unfurnished? A. Finished January 10, 1884; occupied June 24, 1884.

"12. When did the defendant school district complete and finish the school-house? A. January, 1884.

"13. What other contract was made with defendant Eley for the erecting of the school-house than the arrangement and contract made between him and C. A. Sawyer, treasurer of the defendant school district? A. No other.

"14. What did the defendant school district expend, and what did they do to the completing of the school-house? A. Expended $600; plastered and completed the house.

"15. What knowledge had they, if any, that the defendant

40 — 48 KAS.

Hiram Eley contracted for the building the school-house, and that he had done so under a contract of agreement with C. A. Sawyer, treasurer of the defendant school district? A. General knowledge, and by erection of building.

"16. What action did defendant school district take in the meeting of school district to accept this school-house which the defendant Eley had partially constructed? A. By completing arrangements to pay indebtedness accrued by reason of finishing said house.

"17. What use did the defendant school district make of it since? A. Used it for school purposes.

"18. What other school-house had the defendant school district at the time of accepting the school-house commenced by defendant Eley? A. The old school building.

"19. What did the defendant school district do in the way of finishing the school-house commenced by the defendant Eley? A. Plastered it and hung doors.

"20. What did defendant school district do in insuring the school-house erected for the defendant school district? A. Insured it in the Burlington company.

"21. What moneys of the defendant school district, with its consent, were paid to the defendant Eley as part payment to build the school-house? A. None by consent of the district.

"22. Did defendant school district, at the time of its acceptance of house, have a full knowledge of all the facts in regard to the arrangements between Eley and its treasurer, C. A. Sawyer, and abandonment of the contract by the defendant Eley, and that the school-house had only been partially completed? A. Yes."

"25. Did the board of the defendant school district have full knowledge of the contract and arrangements between Eley and Sawyer to build said school-house? A. No.

"26. If the board did not have full knowledge, could it have ascertained it by exercising reasonable diligence? A. Yes.

"27. Did the majority of the board have full knowledge of the fact? A. Yes.

"28. Did Hiram Eley contract with the plaintiff for the plaintiff to furnish the lumber and lime to be used in the construction of the school-house? A. Yes.

"29. If so, what amount did the plaintiff furnish defendant Eley to be used in the construction of this school-house? A. $469.35.

"30. Was this lumber and building material actually used in the construction of this school-house; if not, how much was used? A. It was.

"31. What was it reasonably worth, the amount that was used? A. $469.35.

"32. From what time have you allowed interest thereon? A. From November 12, 1883, to November 23, 1888.

"33. What amount is due plaintiff from the said Eley for the said material so used? A. $634.52.

"34. Did plaintiff file a mechanic's lien for the material so furnished the said Eley, in the construction of said school-house, with said district clerk of Brown county, Kansas, and if so, when? A. He did, on the 14th day of January, 1884.

"35. Did plaintiff serve a copy of said lien on the defendant school district, or its officers, and if so, when and on whom? A. He did, on or about January 15, 1884, on each member of the board."

Questions and answers of fact submitted by defendant:

"1. At the meeting of June 24, 1884, was there any statement made about the alleged contract between Sawyer and Eley, that Eley should build the school-house? Ans. There was not.

"2. At said meeting, was the ratification of any contract between said Sawyer and said Eley discussed or voted upon? A. There was not.

"3. Was there any contract entered into between said Eley and Sawyer that was ever submitted to the district board or the district? A. There was not.

"4. If any contract was entered into between said Eley and said Sawyer, what were its terms? A. Implied contract, requiring the payment of $838.

"5. Was there any contract entered into between the board and said Eley? A. No.

"6. If question No. 5 is answered in the affirmative, what was it, and when, and who of said board was present? A. ———. `

"7. Did said Sawyer pay said Eley out of the money in his hands belonging to said school district for what he did and furnished in and about said building — said school-house? A. He paid him $600.

"8. What was the amount said Sawyer paid to said Eley out of the funds of the district for what he did and furnished in and about the building of said school-house? A. $600.

"9. Was it the intention of said district to ratify any contract between said Eley and said Sawyer at said meeting of June 24, 1884? A. It was not their intention.

"10. At the meeting of June 24, 1884, was it generally believed between the voters there present that Eley had been paid for what he had done in and about the building of said school-house? A. It was generally believed."

In the former opinion in this case, it was held that if the contract for the construction of the school-house was void for the reason that it was not made by the entire school board, but only a portion thereof, yet it could be ratified and made binding by the full school board, or by the school district. At the new trial in the district court, the record of which we are now considering, the main issue was whether the action of the school board, in completing the building that had been left in an unfinished state by an absconding contractor, and the action of the school district in furnishing the school-house with seats, charts, etc., and in using the house for a school-house, was a ratification of the building contract. The evidence was somewhat conflicting, but the jury seem to have considered the various acts enumerated in their special findings to be a ratification, and their general verdict for the lumber man expressed their determination. The trial court approved the general verdict. The plaintiff in error raised numerous questions about transactions that occurred prior to the meeting on the 24th day of June, which we deem entirely immaterial.

It makes no difference now how bitterly a portion of the residents of the school district opposed the building of the school-house, or how much they dissented from the manner of letting the contract, or who was the lowest bidder, the sole question being, did the school district, by the enumerated acts, ratify the contract? As a matter of law, we think enough has been shown by the special findings to authorize both the jury and trial court to say there was a ratification. This accords with the general equities of the case, as the school district has the benefit of the lumber furnished by the defendant

in error, as it is shown that it was all used in the construction
of the school-house.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.