## BADGER OIL & GAS CO. v. PRESTON.

No. 5625.    Opinion Filed October 12, 1915.

(152 Pac. 383.)

1.  **CORPORATIONS—Officers and Agents—Term of Employment—
    Field Manager of Corporation.**  Where, in an action to recover
    seven months' salary alleged to be due and unpaid, the court
    held the hiring to be for a year by virtue of section 1, art. 4,
    of the by-laws, which, after providing for the executive officers
    of the company of which the president and field manager was
    one, directed that a field manager be elected each year,
    **held,** that plaintiff, elected field manager pursuant thereto, was
    not an officer with a term, but an employee without a term, and
    held his agency at the pleasure of defendant, and that, too,
    although at the time he was so elected, by proper resolution,
    his salary as field manager was fixed at $250 per month.  **Held,**
    further, that holding his agency as he did, at the pleasure of
    defendant, he could be discharged at any time with or without
    cause.

2.  **CORPORATIONS — Discharge of Employee — Field Manager.**
    Where during the time a field manager was holding his agency
    at the pleasure of defendant, its board of directors, by motion
    duly carried, declared the office vacant and appointed a new
    executive board, of which he was not one, to look after the
    company's business, which it thereafter did, **held,** that the same
    operated to discharge him as field manager.

3.  **CORPORATIONS—Officer and Manager of Corporation—Secret
    Profits.**  Where plaintiff, while president and acting as field
    manager of defendant, bought a block of its stock for $250 and
    turned it in to defendant for $2,850 and secured credit on his
    account against defendant for that amount by representing to
    defendant that he had paid that much therefor, **held,** that the
    defendant, on its cross-petition, was entitled to recover from
    plaintiff the difference between the amount paid and the amount
    received, or $2,600; and this for the reason that while acting
    as such he stands in a fiduciary relation to defendant and will
    not be permitted to make a secret profit out of the transaction.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County;
Tom D. McKeown, Judge.*

Action by R. C. Preston against the Badger Oil & Gas Company. a foreign corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Chas. T. Barney,* for plaintiff in error.

*C. A. Galbraith* and *Gray & McVay* for defendant in error.

TURNER, J. On December 5, 1912, R. C. Preston, defendant in error, sued the Badger Oil & Gas Company, a foreign corporation, plaintiff in error, for $1,785, for seven months' services rendered as field manager of defendant. He alleged that defendant employed him as such from and after October 10, 1911, for a term of one year at a salary of $250 per month; that it paid him for five months at that rate, after which it "wantonly and willfully violated and breached its said contract, by failing and refusing to pay his salary as the same became due for the remainder of the year, * * *" and prevented him from rendering the service although he stood ready, etc. In the answer filed, which is, in effect, a general denial, defendant admitted employing plaintiff for so long as his services should be satisfactory to the board, "not to exceed twelve months, beginning with October, 1911, at a monthly salary of $250." Defendant alleged that as such field manager he had served for five months and been paid in full therefor and been discharged. By way of one of two counterclaims defendant says: "That while acting as field manager plaintiff represented to defendant that he had found it necessary to defendant's interest to get rid of George Snavely, former vice president of the corporation, and that in order to do so it was necessary to pay, and that he had in fact paid, said Snavely $2,850, from funds of the defendant in plaintiff's

hands, for Snavely's 8,000 shares of stock in the corporation, and turned said stock into defendant's treasury; that said representations were false and fraudulent, in this, that it was not necessary to pay, and that plaintiff had not in fact paid, and never has paid, said Snavely $2,850 for said Snavely's said shares of stock, but paid him only $250, and converted to his own use the difference or balance of $2,600, the money of said defendant, and has never returned it to defendant or justly accounted to defendant for the same." Wherefore defendant prayed judgment. After issue joined by reply, there was trial to the court and judgment for plaintiff for $1,785, and judgment against defendant on its counterclaims, and defendant brings the case here.

In his special findings of fact the court found:

"The defendant's charter provides that the affairs of the company shall be conducted by a board of directors of not more than five, and does not contain any provision as to a field manager, but does contain provisions as to all other officers mentioned in the by-laws."

He also found that section 1 of the by-laws provided that:

"The executive officers of this corporation shall be president, vice-president, secretary and treasurer and field manager, who shall perform the usual duties appertaining to their respective offices and who shall be elected by the directors each year at a meeting subsequent to the annual meeting of the stockholders and immediately following their adjournment. The office of president and field manager may be held by one person. * * * "

Article 5, section 2, provides:

"The field manager shall attend to the general direction and management of the company's business and property and all matters incident thereto."

Also, that section 3, art. 4, reads:

"Vacancies in the office of president, vice-president, secretary and treasurer or field manager shall be filled at any meeting of the board of directors."

He also found that the field manager's salary was fixed at $250 per month, at a stockholders' meeting on October 10, 1911, by resolution, as follows:

"Moved, seconded and carried that the salary of the field manager be fixed at $250 per month. * * *"

From all of which he concluded, as a matter of law, that section 1, art. 4, *supra*, fixed the term of the office of the field manager at one year. The court was wrong. Plaintiff, as field manager, was not an "officer" of the company with a term of office, but an "employee" without a term. The fundamental error of the court was in holding that he was an officer with a fixed term.

In *Vardeman v. Penn Life Ins. Co.*, 125 Ga. 117, 54 S. E. 66. 5 Ann. Cas. 221, the court said:

"One distinction between officers and agents of a corporation lies in the manner of their creation. An office is created by the charter of the corporation, and the officer is elected by the directors or the stockholders. An agency is usually created by the officers, or one or more of them, and the agent is appointed by the same authority. It is clear that the two terms, officers and agents, are by no means interchangeable, one, deriving its existence from the other, and being dependent upon that other for its continuation, is necessarily restricted in its powers and duties, and such powers and duties are not necessarily the same as those pertaining to the authority creating it. The officers, as such, are the corporation. An agent is an employee."

As such employee, he held his agency at the pleasure of the company at a salary of $250 per month, as fixed by the resolution. 10 Cyc. 923, says:

"The 'managing agent' of a corporation, by whatever name called, other than president, and in the case of a banking corporation, the cashier, is a mere employee of the board of directors, has no franchise in his office, but holds it like any other agent or servant subject to the terms of the particular contract under which it is assumed. Unless a stated term is fixed in the contract of employment, undoubtedly such agent holds his agency subject to be terminated at the pleasure of the board of directors."

In *Watson v. Gugine*, 204 N. Y. 535, 98 N. E. 18, 39 L. R. A. (N. S.) 1090, Ann. Cas. 1913D, 215, the court said:

" * * * In this state the rule is settled that, unless a definite period of service is specified in the contract, the hiring is at will, and the master has the right to discharge and the servant to leave at any time. In *Martin v. New York Life Ins. Co.*, 148 N. Y. 117, 42 N. E. 416, the defendant employed the plaintiff to take charge of its real estate department at a salary of $5,000 a year. Subsequently his salary was raised to $6,500, and finally to $10,000 a year, payable monthly. We held that the hiring was at will and that the contract could be terminated at any time by either party. Judge Bartlett. speaking for the court, adopted the language used by Mr. Wood in section 136 of his work on Master and Servant, as follows: 'The rule is inflexible that a general or indefinite hiring is *prima facie* a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is on him to establish it by proof. A hiring at so much a day, week, month, or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve. * * * A contract to pay one $2,500 a year for services is not a contract for **a year,** but a contract to pay at the rate of $2,500 a year for services actually rendered, and is determinable at will

by either party. Thus it will be seen that the fact that the compensation is measured at so much a day, month, or year does not necessarily make such hiring, a hiring for a day, month, or year, but that in all such cases the contract may be put an end to by either party at any time, unless the time is fixed, and a recovery had, at the rate fixed for the services actually rendered.' "

See, also, *Hill et al. v. Gould et al.*, 129 Mo. 106, 30 S. W. 181; *Queen v. Second Ave. R. R. Co.*, 44 How. Prac. (N. Y.) 281; *Union Bank of Md. v. Ridgely*, 1 Har. & G. (Md.) 325; *Llewllyn v. Aberdeen Brewing Co.*, 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B, 667; *Germania Spar & Bau Verein v. Flynn et al.*, 92 Wis. 201, 66 N. W. 109.

Nor is the field manager any the less an employee by reason of the fact that at the time he was also president of the company. In *Commonwealth v. Christian*, 9 Phila. (Pa.) 556, plaintiff filed a suggestion alleging that defendants held incompatible offices in a certain life insurance company; that theretofore they had been elected trustee therein, and at that time one of the defendants was solicitor of insurance and the other an adjuster of the risks of the company. It was alleged that these latter positions were offices within the contemplation of a certain section of a certain act then in force in that jurisdiction. The prayer was that they be ousted. For answer defendants admitted they were trustees, but denied that the latter positions were offices within the contemplation of that act or under the charter and by-laws of the company. In passing upon a demurrer to this answer, which was overruled, the court held that defendants were not officers of the corporation excepting as trustees. In passing, the court said:

"An officer of a corporation has certain rights which are incident to his position, and which are not enjoyed by

a mere employee. His duties, the mode of his election,. and his term of office, are defined by the fundamental law of the corporation itself. If illegally excluded from his office, he has his remedy by mandamus to compel the corporation to reinstate. He may not be ejected therefrom during his term, except for good reason. The power of amotion is incident to every corporation, but it can only be exercised in the case of an officer for cause shown. Not so with a mere employee. He may be dismissed with or without cause. * * * ''

But for the reason that section 1, art. 4, of the by-laws, *supra,* provided that the directors shall elect the executive officers of the corporation "each year" at a certain time, the court concluded, as a matter of law, that such was intended to mean that a term of office for one year was thereby created for the field manager and that plaintiff was elected at that time to fill it. Not so. The most that can be said as to the effect of this by-law is that it puts the tenure of office of the field manager on a parity with that of the executive officers named therein and does not fix their term at all. As with an employee, so with an officer having no fixed term. "The right to remove officers. of a private corporation is inherent and exists in the absence of statutory authorization." See *Llewllyn v. Aberdeen, etc., Co.,* 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B,. 667, and note. 3 Clark & Marshall, Private Corp., section 666, says:

"* * * *. But if the term of an officer is not fixed by any contract binding upon the corporation, nor by the charter or general law, he may be removed at any time,. with or without cause, by the stockholders, or, generally, by the officer or officers by whom he is appointed, and the removal will impose no liability to him on the part of the corporation. * * * ''

We are therefore of opinion that plaintiff, as field manager, was not an officer of the company, but an employee of the company, and that, as there can nowhere be found to exist between him and defendant any contract of service for any certain length of time, defendant had the right to discharge him as it did. But in the special findings of fact the court held that he was not discharged. In support of defendant's contention that he was discharged, the record discloses that at a directors' meeting on March 2, 1912, present plaintiff and a full board of directors, the minutes show:

"That upon motion of one of the directors and seconded by another that the office of field manager was declared vacant, and it was also moved and seconded and carried that the office of president be declared vacant, and Mr. Garvin (the vice-president) then took the chair as president and the following executive board was appointed: H. L. Larson and O. N. Johnson to act with C. E. Garvin, said executive board to look after the company's business in place of president and field manager. * * * "

And the facts are that, from that time, the executive board thus constituted took charge of the field work, and that plaintiff, as field manager, no longer participated in the affairs of the company. Contrary to the conclusion of law found by the court, this was sufficient to operate as a discharge of defendant as field manager. 26 Cyc. 987, says:

"No set form of words is necessary to constitute a discharge; but any words or acts which show a clear intention on the part of the master to dispense with the servants' services, and which are equivalent to a declaration to the servant that his services will be no longer accepted, are sufficient."

There could at the time have been no mistaking the effect of the motion which declared the office of field manager vacant, followed by a motion which placed the management of the affairs of the company in the hands of another executive board of which the field manager was not one. That such was the practical construction placed upon this action of defendant at the time by both parties in interest is evidenced by the fact that the plaintiff as field manager ceased to participate in the active management of the company and that the company refused to pay him further for his services as such.

The only remaining question for us to consider is whether defendant is entitled to recover on its cross-petition. On this point the court found, as alleged, that plaintiff, while president and acting as field manager for defendant, bought 8,000 shares of defendant's stock from one Snavely for $250, and turned them into the company for $2,850, representing to the company that they cost him that amount, and that said amount was allowed him in settlement of his accounts with the company. We say that the court found that he did this while president and acting field manager of defendant for the reason that the court specifically so found. In the third finding of fact the court found that the corporation was incorporated in March, 1910, and did not hold a stockholders' meeting until October 10, 1911; that at the meeting plaintiff was elected president of the board of directors; "that this meeting was called to order by R. C. Preston, who had been named in the articles of incorporation as president and had been acting as field manager in looking after the oil fields in Oklahoma," and whom, "for services performed prior to the stockholders' meeting," the stockholders then and there voted and paid a salary of $100 per month; that at

the meeting he was elected field manager and his salary fixed as stated; that afterwards at the same meeting an auditing committee was appointed, and plaintiff settled his accounts with that committee and made the representations and secured the credit of $2,850 complained of "for work done prior thereto." From all of which we say the court in effect found that after the company was organized and incorporated, but before the first stockholders' meeting, plaintiff, while acting as field manager, took $250 of defendant's money and bought 8,000 shares of defendant's stock, and at that stockholders' meeting, and after he was elected president and field manager, he, as field manager, went before the auditing committee and turned them in for $2,850, and thereby secured a credit of $2,600 more than he was entitled to. Contrary to the court's conclusion of law on this state of facts, the defendant was entitled to recover the difference between $250 paid and the $2,850 received from the company for the stock. This for the reason that in buying the stock he was acting as agent of defendant and was not entitled to take for himself a profit in the transaction. 3 Clark & Marshall, Private Corporations, section 757, says:

"The directors and other officers of a corporation occupy a fiduciary relation towards the corporation, and cannot, either directly or indirectly, in their dealings on behalf of the corporation, or in any transaction in which it is their duty to guard the interest of the corporation, make any secret profits, or acquire any other benefit or advantage, not also enjoyed by the other stockholders, unless the latter consent."

This rule is so elementary that it needs no further citation of authorities. But see 2 Purdy's Beach on Private Corporations, sections 737-740; *Sargent v. Kansas M. Ry. Co.*, 48 Kan. 627, 29 Pac. 1063; *Parker v. McKenna*, 31

Badger Oil & Gas Co. v. Preston.

L. T. R. (N. S.) 739; *Benson v. Heathhorn,* 1 Y. & C. C. C. 326; *Parker v. Nickerson,* 112 Mass. 195; *Mt. Vernon Bank v. Porter,* 148 Mo. 176, 49 S. W. 982; *Jackson v. Ludeling,* 21 Wall. 616, 22 L. Ed. 492; *Cook v. Sherman* (C. C.) 20 Fed. 167; *Bird Coal & Iron Co. v. Humes,* 157 Pa. 278, 27 Atl. 750, 37 Am. St. Rep. 727; *McClure v. Law,* 161 N. Y. 78, 55 N. E. 388, 76 Am. St. Rep. 262; *Duncomb v. N. Y., N. H. & H. R. R. Co.,* 84 N. Y. 190; *McDonald v. Haughton,* 70 N. C. 393.

We are therefore of opinion that the court erred when it found as a matter of law:

" * * * That inasmuch as the 8,000 shares were worth approximately 60 cents on the dollar on the 10th day of October, 1911, at the time when the auditing committee of said defendant company credited plaintiff's account with $2,850, there was no fraud on the part of plaintiff in this transaction, and that the defendant cannot at this time and upon its counterclaim recover the item of $2,600 sued for in said counterclaim."

In so holding we are not unmindful that the court also found that this 8,000 shares of Snavely stock was issued to him as a promoter of the company and was known as "promotion stock"; that a like amount was issued to plaintiff "for which they were to pay $750 each and the expenses of the promotion of the company"; that Snavely paid in on his stock $100 only; and that plaintiff took it off his hands by paying him $100 to cover the money paid and an additional sum of $150 to cover expenses and commissions due him for stock sold." But this in no way changes the facts that this stock was paid for with $250 of defendant's money upon which plaintiff took a credit for $2,600, to which he was not entitled, for the reasons stated.

Neither are we unmindful of plaintiff's motion to dismiss this appeal on the grounds that, as the court's findings of fact and conclusion of law were not called for, the judgment in his favor was a general judgment, and, as the evidence is not brought up and the errors complained of require an examination thereof, we have nothing before us to review. But there is no merit in this contention, for the reason that where, as here, it is recited in the case-made that, "After hearing the evidence and argument of counsel, the court took the same under advisement to prepare and file his findings of fact and conclusions of law, which are as follows (reciting them)," it will be presumed that he was required so to do, especially where, as here, after they were made, defendant then and there excepted thereto, and the journal entry of April 4th recites that plaintiff moved for judgment thereon, which was sustained and judgment rendered and entered accordingly.

There is no merit in the other counterclaim.

We are therefore of opinion that the cause should be reversed and remanded, not for a new trial upon plaintiff's demand, but, as defendant's right to recover said $2,600 upon its counterclaim may upset the account stated between plaintiff and defendant, the cause is reversed and remanded for a new trial upon the counterclaim only, with leave to plaintiff to plead anew thereto if he so desires.

All the Justices concur.