No. 22,847.

O. C. BRADSHAW, as Administrator, etc., *Appellee,* v. THE FARMERS & BANKERS LIFE INSURANCE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

LIFE INSURANCE—*Terms of Policy—Limiting Liability in Case of Death While Engaged in Military Service.* A provision in a life insurance policy was to the effect that, if the insured engaged in military or naval service and died while in such service, the extent of the liability of the insurer should be the return of the premiums paid on the policy. It was also provided that the limitation would not apply if an insured engaging in the service should obtain a permit from the insurer and pay the extra premiums required. The insured, who had been inducted into military service under the selective-service act and was acting as

chief blacksmith of his company in a training camp, died of pneumonia. *Held*, that the agreement limiting the liability of the insurer where the insured engaged in military service was one the parties had a right to make and is binding upon both of them, and that the extent of the liability of the insurer on a policy was the amount of the premiums paid thereon; and *held*, further, that the limitation of liability applies equally to persons inducted into the military service under the selective-service act, as to those who voluntarily enlist in that service.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed November 6, 1920. Reversed.

*J. A. Brubacher,* of Wichita, for the appellant.

*Donald Muir* and *Henry J. Brady,* both of Anthony, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by O. C. Bradshaw, as administrator, against the Farmers & Bankers Life Insurance Company, upon a life insurance policy. The plaintiff recovered judgment and defendant appeals.

The policy was issued on the life of Emmett Elton Bradshaw on November 27, 1917, and the premium for the first year, $86.90, was paid. Included in the policy was a military and naval-service clause, which reads as follows:

"If, within five years from the date of this policy, the insured shall engage in military or naval service in time of war, the liability of the company, in event of the death of the insured while so engaged, or within six months thereafter, will be limited to the return of the regular premium paid hereon, exclusive of any extra premium, less any indebtedness to the company hereon;

"UNLESS, before or within one month after engaging in such service, or at the time of issuance hereof if the insured be already so engaged, the insured shall secure permit for such service and pay to the company, at its home office in Wichita, Kansas, such extra premium as may be required by the company, and, in like manner, shall pay, annually thereafter, on each anniversary of this policy or within one month thereafter, while the insured shall continue to be so engaged, such extra premium as may be required by the company.

"Within one year after the termination of the war the company will return such portion of the extra premium as in its judgment will not be required to cover the extra hazard. In event that the insured enters such service any total and permanent disability benefit or double indemnity for accidental death benefit shall be cancelled automatically upon such entry

and any premium paid for such benefit or benefits shall no longer be collected.

"Service in the aviation corps or on submarines within five years from date of this policy is a risk not assumed under this contract and in event of death while engaged in such service the amount payable shall be limited to the return of the regular premium paid hereon exclusive of any extra premium paid for military or naval service, less any indebtedness to the company hereon."

Under a rule of the insurance company permits for military and naval service were granted upon payment of an added premium of $37.50 per year on each $1,000 of insurance. After the issuance of the policy and about June 1, 1918, Emmett Elton Bradshaw was inducted into the military service under the provisions of the selective-service law and sent to Camp Ft. Logan in Colorado, where he was assigned to duty as a member of a cavalry troop which was shortly afterwards transferred to Ft. D. A. Russell in Wyoming. There he was assigned to duty as a blacksmith and horseshoer, but was drilled in the cavalry service and trained as a marksman. The troop to which he had been assigned was transferred into a battery of field artillery on September 8, 1918, and that battery was sent to a camp near West Point, Kentucky. After arriving at the camp in Kentucky he served as chief blacksmith for his company, drawing the pay of a top sergeant, but was not required to drill. About three weeks after arriving at that camp he had an attack of influenza and died as the result of lobar pneumonia on October 13, 1918, in a hospital at Camp Taylor. From the time he entered the military service until his illness he wore the uniform of a soldier and was under military supervision. While being transferred from the fort in Wyoming to the camp in Kentucky he traveled on a pass given by a superior officer, which read: "Pass Sergeant ———— and horseshoer Bradshaw." When the claim for insurance was presented the defendant acknowledged liability for and offered to pay the amount of the premiums which had been paid by the insured for the policy, but refused to pay the face value of the policy because of the fact that the insured had entered and was in the military service when he died, and had not obtained a permit nor paid the added premium for the extra hazard arising from such service. There is no dispute as to the facts in the case, no question as to the validity of the contract of insurance, but

there is a controversy as to the meaning and effect of the terms of the policy.

The provisions of the war clause, giving them their natural and ordinary meaning, fairly imply that to secure the full indemnity of $2,500, in case the insured engages in military service, he must have paid the extra premiums, and if these are not paid only the limited liability attaches. They recite that if the insured shall engage in military service and he dies while so engaged, the limit of liability will be the regular premiums that have been paid. They further stipulate that if he engages in such service he shall obtain a permit from the company and also pay the extra premiums required by the company and continue such payments at each anniversary of the policy while he is so engaged, and the company in turn agreed that when the war ended it would return any part of the extra premiums not required to cover the extra hazard. It is conceded that about six months after the policy was issued the insured entered the military service and continued in that service until his death, and it is further conceded that no permit was asked and no extra premiums were paid. However, the plaintiff contends that the provision for limited liability does not apply because Bradshaw was not in fact engaged in the military service and that his death from pneumonia was not the result of military service. It is urged that the word "engage" as used in the policy implies more than that he is in the military service but carries the idea that the extra premium is based upon the hazards attendant upon active service and that the policy when liberally interpreted only exempts the company from liability for the face of the policy when the insured is actually and actively performing functions in or near the firing line or is otherwise exposed to war activities. The insured, it is contended, was a company blacksmith while he was at the camp and the hazards were no greater than if he had been employed at the same work as a civilian outside of military service and, besides, his death did not result from war activities. The cases cited by counsel relating to war clauses of insurance policies, are not in harmony, but the differing views of the courts rest to quite an extent on the differing terms of these provisions. A somewhat similar provision was before this court in *LaRue v. Insurance Co.*, 68 Kan. 539,

Bradshaw v. Insurance Co.

75 Pac. 494. There the policy provided that the insured might serve in the militia or the military or naval service of the United States in times of peace without prejudice to the insurance policy, and he might so serve in time of war by giving the insurer notice and paying an extra premium for the war hazards, but in case of death the company should be liable for the reserve on the policy only. He enlisted in the United States service and aided in putting down the insurrection against the United States government in the Philippine Islands. No premium was paid and it was held that the company was not liable for more that the reserve on the policy.

Among the cases growing out of the late war is *Mattox v. New England Mut. Life Ins. Co.* (Ga.), 103 S. E. 180). The policy provided that the insured should not engage in military or naval service without the consent of the insurer, and in case he did engage in such service in time of war and his death occurred while so engaged, the liability of the insurer would be limited to the return of the premiums paid on the policy. The insured enlisted in the dental corps of the army and while aboard a transport bound for France he became ill with pneumonia and died while at sea. At the time of his death he was performing dental service and under the military regulations no combatant service was or could be required of him. The plaintiffs sought a recovery of the face value of the policy but the court gave effect to the terms of the war clause and rendered judgment for the insurer.

In *Ruddock v. Detroit Life Ins. Co.* (Mich.), 177 N. W. 242, the insured was inducted into the military service after he had obtained a policy which provided that it—

" 'shall be incontestable after one year from date, except for nonpayment of premium and except for naval or military service in time of war, without a permit, which are risks not assumed by the company, provided that, in case of the death of the insured while engaged in such service, without a permit, the amount payable hereunder shall be the reserve on the policy at date of death. Military and naval service in time of war shall be construed to include work as a civilian in any capacity whatever in connection with actual warfare.' " (p. 243.)

Within three months after entering the service the insured died from disease in a training camp. It was contended in the action that, as he entered the army by conscription and not voluntarily, and as he was not engaged in active military serv-

ice at the time of his death, the provisions of the military clause were not effective. The court held that such clauses are not contrary to public policy, that the insured was in the military service when he passed the examination, took the oath and was enrolled as a soldier, and that one so inducted into the army is as clearly engaged in the military service when in training as when before the enemy. It was further held that it was competent for the parties to draw the line when liability should cease in time of war, and that the court could not without changing the contract ignore the war clause and hold the defendant liable for the amount named in the policy.

In a case from Missouri the policy provided that if the insured died while engaged in naval or military service or in consequence of such service, the liability of the insurance company would be limited to an amount equal to the net reserve and, further, that this condition would be waived if extra premiums were paid by one engaged is such service. The insured entered the army under the selective-service act and he died of pneumonia while in training. The court held that the insured was engaged in the military service when he died, that the exemption in the military clause was one which the parties had a right to make and that the insurance company was not liable beyond the net reserve of the policy. (*Reid v. American Nat. Assur. Co.* [Mo. App.], 218 S. W. 957).

In another case the court of appeals of Missouri held under a stipulation in a war clause that if insured should engage in military or naval service in time of war the liability of the company in the event of death while so engaged or within six months thereafter as a result of such service, should be limited to a return of the premiums. The court held that it was not enough for the insurance company to prove that the insured was engaged in military service and died while so engaged, but that under the conditions of the clause it must further prove that he died as the result of such service. It was held that one who had been inducted into the army was engaged in military service, but that the exemption from liability for death rested not alone upon the insured being engaged in that service, but also upon the cause of death; that is, death "as the result of such service." It was remarked that proof of the first by no means proved the second. (*Malone v. State Life Ins. Co.* [Mo. App.], 213 S. W. 877.)

In *Redd & Thompson v. Am. Cent. Life Ins. Co.*, 200 Mo. App. 383, the policy involved contained a provision that " 'in case of death from service in war without permission from the company, the full reserve for this policy at the time of such death only will be paid.' " (p. 384.) In the application for the policy it was stated that active service in the army in time of war would invalidate the insurance unless a permit was given. The court in a divided opinion held that the term "active service" in a military sense meant the performance of duty against an enemy or operations carried on in his presence in time of war and that one in a training camp thousands of miles from the scene of hostilities was not engaged in active service. The case turned upon the use of the term "active service," and it was interpreted to mean the service one renders when engaged or enlisted in actual hostilities, and the insured not being in such service at the time of his death, judgment was awarded the plaintiff for the face value of the policy.

In the late case of *Miller v. Illinois Bankers' Life Ass'n* (Ark.), 212 S. W. 310, the supreme court of Arkansas passed on a policy containing a clause to the effect that the death of the insured while in military service is not a risk covered by the policy for any greater sum than the amounts actually paid as premiums. The insured died while in a camp in this country, and it was ruled that he was in the military service within the meaning of the provision exempting the insurer from liability.

In a later case, *Benham v. American Central Life Ins. Co.* (Ark.), 217 S. W. 462, a condition of the policy was that " 'death while engaged in military or naval service in time of war, or in consequence of such service, shall render the company liable for only the reserve under this policy, unless the company's permission to engage in such service shall have been obtained, and such extra premium or premiums as the company may require shall have been paid.' " (p. 462.) The insured died of influenza while undergoing training in this country, and it was held by a bare majority of the court that the term "engaged" denotes action and meant death while doing or taking part in some military service, and that taking this term in connection with the phrase "in consequence of such service," the parties meant that the liability related to a death resulting from some act connected with the service in contradistinction

to a period of time when he was in such service. A like interpretation was placed upon a similar clause in *Nutt v. Security Life Ins. Co. of America* (Ark.), 218 S. W. 675. The justices dissenting in the last two cases insisted that the cases were controlled by the rule of *Miller v. Illinois Bankers' Life Ass'n,* supra, and made the forcible contention that the terms of the policy related to the status of the insured and not to the cause of death.

In a case decided a few days ago, the Missouri court of appeals declined to adopt or follow the interpretation placed by the Arkansas supreme court upon the word "engaged" and held that the exemption clause was enforceable where death resulted from pneumonia. (*Slaughter v. Protective League Life Ins. Co.* [Mo. App.], 223 S. W. 819.)

The supreme court of Wisconsin had before it a policy containing a military clause to the effect that if the insured engaged in any miltary or naval service or work as a civilian in connection with active warfare and died as a result of engaging in such service or work, only a limited liability would attach. Applying the rule that such exemption should be construed most strongly against the insurance company it was ruled that the clause did not limit liability for all deaths in military service but only for such as are due to some cause peculiar to military service. In this case the insured met his death while riding a motorcycle under circumstances it is said which were not peculiar to military service and it was therefore held that the insured could recover all of the insurance. The court evidently gave force to the provision limiting liability where the service or work was performed in connection with actual warfare. It stated that—

"The hazards attendant upon riding a motorcycle, under the facts set out in this case, were no greater because the insured was engaged in the military service of the United States than if he were performing a like act as a civilian and apart from the military service. In other words, his death resulted from circumstances which are common to military and civil life." (*Kelly v. Fidelity Mut. L. Ins. Co.*, 169 Wis. 274, 276.)

One of the cited cases is *Myli v. American Life Ins. Co.* (N. D.), 175 N. W. 631, where the insured died of influenza while in the naval service. An insurance policy on his life provided that if his death occurred while engaged in military

Bradshaw v. Insurance Co.

or naval service where no permit for such service had been granted, only a limited liability would attach. The court ruled that, because of other provisions in the policy relating to the payment of double indemnity which were united with the exemption for the extra hazards of military and naval service, the limitation did not apply unless the death resulted from such extra hazards.

Another case cited is *Sandstedt v. American Cent. Life Ins. Co.* (Wash.), 186 Pac. 1069, which involved a policy containing a military clause limiting liability where the insured dies while engaged in military service, and it was determined that the exemption was controlling and judgment was given for the defendant. The principal controversy in that case was as to the effect of statements made by a local agent of the insurance company to the mother of the insured, and it was held that these did not constitute a modification or waiver of the conditions of the policy, and that under its terms no recovery could be had.

A case from West Virginia is cited, but the determination there was placed on a rule of estoppel arising on the representations made and interpretations placed on the policy by the agent of the insurance company when the insurance was taken, on which the insured relied, and had a right to rely, and therefore his failure to pay the extra premiums did not defeat a recovery of the insurance. (*Edwards v. Masonic Mut. Life Ass'n* [W. Va.], 103 S. E. 454.)

Although there is some conflict in the authorities the better reason is with those which hold that such limitations do not conflict with any public policy and that when they are plainly expressed in insurance contracts parties are bound by them. The extra hazards of military and naval service furnish a good ground for requiring the consent of the insurer and the payment of extra premiums. The decisions denying the enforcement of such provisions are mostly placed on exceptional conditions interpreted to mean that the limitation applies when death results in consequence of war activities or in connection with actual warfare, provisions not found in the policy in question.

We are unable to agree with those decisions holding that the expression "engaged in military service" means the per-

formance of functions in actual war or in resisting the hostile action of the enemy. As used in the policy in question the term means no more than the insured was in the military service. Status and not causation is the ground for the limitation and it is plainly provided that anyone engaged in military service may, by obtaining consent of the insurer and paying added premiums, keep alive the whole insurance provided by the policy. Nor do we find anything in the conditions of the policy that gives ground for a distinction between those who volunteer and enter the service by enlistment and those who are taken in under the selective-service act. In either case there is freedom of contract to fix the extent of liability. As was said in *Ruddock v. Detroit Life Ins. Co.,* supra:

"The government to which both owed allegiance had the right to call the deceased to the service. We are unable to perceive that public policy prevented them from contracting that if that event took place defendant should not be bound if death occurred while in such service unless a permit was given and an additional fee or premium paid. The parties did not differentiate between voluntary and involuntary service, between service performed under enlistment and service performed under the draft law, and we cannot, without making a contract for them, read such differentiation into the policy." (p. 245.)

The judgment is reversed and the cause remanded with directions to enter judgment against the defendant for the amount of the premium paid on the policy by the insured.