## ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA v. GREER.

### No. 243.

Circuit Court of Appeals, Tenth Circuit.

Sept. 4, 1930.

E. W. Dillon, of Columbus, Ohio (Wilkerson & Brown, of Pryor, Okl., on the brief), for appellant.

John T. Harley, of Tulsa, Okl. (A. C. Brewster, of Pryor, Okl., and Roberts & Clark, of Vinita, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The appellee recovered a verdict on an accident policy, and the defendant appeals. The facts will sufficiently appear in connection with the discussion of the errors assigned.

■ I. At the close of all the evidence the defendant moved for an instructed verdict on the ground of insufficiency of the evidence. The insurance certificate bound the defendant to pay in event of death resulting from bodily injury effected through accidental means; the certificate, however, sets forth a great variety of circumstances under which the company will not pay in case of accidental death. One such is "murder or disappearance, injuries (fatal or otherwise) intentionally inflicted by others (except where such injuries are inflicted for the sole purpose of burglary or robbery or by an insane person, the intent to commit burglary or robbery to be established by the claimant * * *)." The evidence showed that the insured was killed by blows on the head, while he was lying in bed; there was a small hole, apparently cut by a knife, in the screen door opening into the house; the insured habitually carried a considerable sum of money on his person, and ordinarily a considerable sum of money was kept in the house; the billfold of the deceased was rifled and found on a highboy in the room, and there was blood on the highboy. The defendant argues, with apparent seriousness, that these circumstances are not sufficient to justify the jury in finding that the murder was for the sole purpose of burglary or robbery. The insurance certificate does not require that the burglary or robbery be established by an eyewitness. There was ample evidence to submit to the jury the question of whether burglary or robbery was the sole motive of the murder.

■ II. Defendant claims that the certificate is voidable because of a misstatement of fact by the insured in his application, to-wit, that he did not use alcoholic liquors. The application bears this notation: "Date 11/8/13." The certificate was issued on February 14, 1914. The application states that the insured resides in Sioux Falls, S. D.; that his beneficiary is Anita Greer, his wife. The defendant introduced at the trial the deposition of one Murray, who testified that he first met the insured in March, 1913, in Minneapolis, at which time he hired the insured to work for him in Minneapolis; that he "worked in Minneapolis for about a year from March, 1913, during which time I saw him nearly every day. Mr. Greer was not married at that time, but was married about a year thereafter"; that Greer was a moderate drinker, with occasional excess. It is apparent that Mr. Murray's statement is incorrect as to the dates. He testified that Greer worked for him in Minneapolis about a year from March, 1913, and his testimony was concerning his knowledge of him in Minneapolis. But it is clear that the insured was married in January, 1914, and that he lived in Sioux Falls at that time. In any event, the evidence of Mrs. Greer was sufficient to carry to the jury the question of whether the deceased used

intoxicating liquors at the time the certificate was applied for.

■■ III. The third and principal assignment of error is leveled at the court's charge to the jury. The certificate exempts the defendant from liability if, at the time of the injury, the insured was "under the influence of liquor or narcotics in any degree." The application, which is made a part of the policy, provides: "Do you understand that a certificate of membership, if issued to you, will not cover any injury, loss, disability or death, which may happen while under the influence of or in consequence of having been under the influence of any intoxicating drink or narcotic, or either or any of them? Yes."

One of the defenses interposed was that the insured was under the influence of liquor at the time of his death. To support this defense, the defendant introduced in evidence the testimony of the plaintiff given during the trial of another case. Plaintiff contends that this evidence was offered for the purpose of impeaching her testimony in chief to the effect that the insured was not intoxicated when he was killed; and that such impeaching evidence is not substantive evidence. But the plaintiff was a party to the action, and statements of parties are in themselves independent and substantive evidence against such party. Jones on Evidence, §§ 2412, 2414. Plaintiff's admissions were to the effect that the insured had been drinking for about a week prior to his death; that the day before his death she had gotten a quart of whisky for him; that he and another party already had one quart, but that would not be enough to last him over the week-end; that a quart of whisky would last him about a day; that she had told people that he was sick at his cottage, because she did not want them to know about his drinking. The question, of course, is whether he was under the influence of liquor at the time of his death, and not whether he might have been. This defense must be supported by proof, and the jury will not be permitted to speculate or guess about it. In Atchison, Topeka & Santa Fe Ry. Co. v. Toops, 281 U. S. 351, 50 S. Ct. 281, 282, 74 L. Ed. 896, it appeared that an accident might have resulted from the negligence of the defendant or from other causes. The court held that in this state of the record "the jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer. Patton v. Texas & P. Ry. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361; New Orleans & N. E. R. Co. v. Harris, 247 U. S. 367, 371, 38 S. Ct. 535, 62 L. Ed. 1167; St. Louis-San Francisco Ry. Co. v. Mills, 271 U. S. 344, 347, 46 S. Ct. 520, 70 L. Ed. 979; C., M. & St. P. Ry. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; New York Central Railroad Co. v. Ambrose, 280 U. S. 486, 50 S. Ct. 198, 74 L. Ed. 562."

However, it is our opinion that the jury might reasonably have found from the evidence, without speculation, that the insured was under the influence of liquor at the time of his injury.

Upon this issue the court charged as follows: "You are further instructed that if you find from a fair preponderance of the evidence that the deceased was in any degree under the influence of intoxicating liquor or alcohol, and you further find that the said condition of intoxication contributed in any manner to his death, or rendered him incapable of properly caring for himself and preventing the injury to him which resulted in his death, then your verdict must be for the defendant."

The defendant excepted to "that part of the court's instructions in regard to intoxication, and the refusal of the court to define the word intoxication and drunkenness as requested by instructions submitted to the court before the instructions were given by the court."

The bill of exceptions does not disclose any instructions requested by the defendant. In a motion for a new trial the defendant states that it requested the court to instruct that, if they found that the deceased "was in any degree under the influence of intoxicating liquor at the time of his death, then your verdict should be for the defendant." The bill of exceptions contains no statement that any such instruction was requested, nor is such request authenticated in any other manner. Furthermore, such request does not define intoxication.

■ The charge given, so far as it suggests the necessity of a finding that the condition of intoxication contributed to the death, is in error. The language of the contract is plain. It exempts the defendant from liability if the insured was under the influence of liquor in any degree, and causative connection is no part of the contract. Courts construe contracts, and do not make them. Appellee cites several cases which hold that such clauses must be construed as ineffective un-

less a causal connection is shown. In some of them, the policy itself required a causal connection; others do support appellant's contention, but they are in the minority, and in our judgment are unsound. The provision in the policy in this case clearly relates to the status of the insured and not to the cause of death. It was so held by the Fourth Circuit in Flannagan v. Provident Life & Accident Ins. Co. (C. C. A.) 22 F.(2d) 136. The Supreme Court of Kansas was confronted with the question in Bradshaw v. Insurance Co., 107 Kan. 681, 193 P. 332, 11 A. L. R. 1091. A clause in the insurance policy there involved exempted the insurer if death occurred while the insured was engaged in military or naval service in time of war; the insured was in the military service, but there was no connection between such service and his death. The Kansas court, in an able opinion by Chief Justice Johnston, reviewed all of the cases which had been theretofore decided and held that the weight of authority, as well as the weight of reason, required the holding that "status and not causation is the ground for the limitation." Other cases to the same effect are: Shader v. Railway Pass. Assurance Company, 66 N. Y. 441, 23 Am. Rep. 65; Reid v. American Nat. Assur. Co., 204 Mo. App. 643, 218 S. W. 957; Miller v. Illinois Bankers' Life Ass'n, 138 Ark. 442, 212 S. W. 310, 7 A. L. R. 378; Slaughter v. Protective League Life Ins. Co., 205 Mo. App. 352, 223 S. W. 819; Mossop v. Continental Casualty Co., 137 Mo. App. 399, 118 S. W. 680; Standard Life & Acc. Ins. Co. v. Jones, 94 Ala. 434, 10 So. 530.

If the insured was under the influence of liquor in any degree at the time of his death, there can be no recovery, and that part of the charge which required an additional finding that the intoxication contributed to his death was erroneous.

But the charge did not end there. The court further charged in the alternative, "or [if such condition] rendered him incapable of properly caring for himself and preventing the injury to him which resulted in his death." If this portion of the charge is correct, being in the alternative, the error heretofore noted is harmless. The court was right in undertaking to define the meaning of the clause "under the influence of liquor." One who has taken a glass of beer, or a drink of whisky, may not be under the influence of liquor. Intoxication is difficult to define. In Manufacturers' Accident Indemnity Co. v. Dorgan (C. C. A.) 58 F. 945, 952, 22 L. R. A. 620, the trial court charged that one was intoxicated within the meaning of the policy if "he was not fairly able to take care of himself prudently and properly." Cooley in his Briefs on Insurance (2d Ed.) p. 5356, defines intoxication as "an undue and abnormal excitement produced by liquor, disturbing the natural action of the physical and mental faculties." The Supreme Court of Idaho held that the word "intoxication" in accident insurance policies means that the liquor has substantially impaired the judgment of the assured in the exercise of his faculties essential to his safety. Mabee v. Continental Casualty Co., 37 Idaho, 667, 219 P. 598, 37 A. L. R. 348. In Furry's Adm'r v. Gen. Accident Ins. Co., 80 Vt. 526, 68 A. 655, 130 Am. St. Rep. 1012, 13 Ann. Cas. 515, it was held that one was intoxicated if he was not fairly able to take care of himself. In Standard Life & Acc. Ins. Co. v. Jones, 94 Ala. 434, 10 So. 530, 533, it was held that "under the influence of liquor" meant "intoxicated." Language must always be construed in its setting. The purpose of the clause should be considered. Manifestly, its object was to exclude the enhanced risk attendant upon intoxication. If liquor had so far affected the faculties of the insured as to impair in any degree his ability of protecting himself against accidents, there can be no recovery. The court, in substance, defined "intoxication" as such a condition as rendered the insured "incapable of properly caring for himself and preventing the injury." It would have been more accurate to have charged the jury that the plaintiff could not recover if the intoxication impaired in any degree the abilities of the assured to care for himself.

But in defining "intoxication" the court received no help from counsel for defendant. Counsel took exception to the refusal of the court to define the words "intoxication" and "drunkenness" as requested by instructions submitted to the court. But the record shows no such requested instructions. Even if the instructions contained in the motion for a new trial be considered, we find that such instructions contain no definition of the word "intoxication."

The case is one peculiarly appropriate for the application of the rule of this court that places the burden upon counsel to direct the attention of the trial court specifically to claimed errors in the charge, and to assist by a correct statement of the matters complained of. If counsel had pointed out his objections to the definition of the word, or had supplied a more accurate definition, the

charge could have been then and there corrected. Having failed to do so, a reversal should not now be predicated thereon.

The judgment will therefore be affirmed.