HARTFORD ACCIDENT & INDEMNITY
CO. v. COLLINS–DIETZ–
MORRIS CO.
No. 1272.

Circuit Court of Appeals, Tenth Circuit.
Dec. 9, 1935.

Arthur Leach, of Oklahoma City, Okl. (F. A. Rittenhouse and John F. Webster, both of Oklahoma City, Okl., on the brief), for appellant.

John Tomerlin, of Oklahoma City, Okl. (Stephen Chandler, Richard W. Fowler, and Tomerlin, Chandler & Shelton, all of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

Collins-Dietz-Morris Company, a wholesale grocery company with its principal place of business at Oklahoma City and with branches at Lawton and Tulsa, instituted this action against Hartford Accident & Indemnity Company to recover on three fidelity bonds which were given to indemnify plaintiff against loss resulting from theft, embezzlement, misappropriation, wrongful abstraction, willful misapplication, or other dishonesty of its employees. The first bond, executed by Metropolitan Casualty Insurance Company for the principal sum of $2,500, was dated March 4, 1927, and expired October 1, 1929. It provided that in case loss was shown to be due to one or more of a group of employees, it should not be necessary to designate the specific employee or employees causing it, but that the aggregate liability therefor should not exceed the face of the bond. The second bond was executed by defendant on October 1, 1929, and it was terminated on October 1, 1930. It was for the principal sum of $10,000 and provided that if loss should occur through fraud or dishonesty of one or more of a group of employees, all of whom were covered by the bond, and the insured should be unable to designate the specific employee or employees causing it, the insured should have the benefit of the bond, provided that the aggregate liability should not exceed $10,000; and it was further expressly provided that liability should be limited to acts committed while the bond was in force and which were discovered and reported not later than two years after its termination. A so-called rider was attached to the bond which, having reference to the bond of the Metropolitan Casualty Company, provided: "Now, Therefore, it is hereby understood and agreed as follows: That the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses which may have been caused under said fidelity suretyship by any 'Employee,' and which shall be discovered after the expiration of any such period, or, if there be no such period, after the bar of the statute of limitations, and before the expiration of the time limited in the attached bond for the discovery of loss thereunder caused by such 'Employee' and which would have been recoverable under said fidelity suretyship, had it continued in force, and also under the attached bond, had such loss or losses occurred during the currency thereof, provided that nothing herein contained shall be construed to render the Surety liable under the attached bond for a larger amount on account of any loss or losses under said fidelity suretyship than would have been recoverable thereunder had it continued in force, or to increase the time for discovering, or making claim for, loss under said fidelity suretyship in beyond what would have been the time, had it continued in force. * * *" The third bond was executed by the defendant on October 1, 1930, and it was terminated one year later. It was

for the principal sum of $2,500; its material provisions were identical with those contained in the previous bond, and it bore a rider similar to that just quoted, except that it referred to the previous bond of the same company.

The action was in two counts. It was alleged in the first that between July 1st and December 31, 1929, plaintiff sustained a loss of $8,859.55 caused by theft and embezzlement of merchandise by its employees; that between January 1st and June 30, 1930, it suffered a like loss of $7,523.25, and that between July 1st and December 31, 1930, it suffered a similar loss of $7,449.18; that it was unable to designate the specific employees causing such losses; that it discovered the losses not earlier than April 30, 1932, and that it gave notice and submitted proof thereof within the prescribed time. Judgment was prayed in the sum of $10,000, the face of the bond of 1929. It was alleged in the second count that between January 1 and June 30, 1931, plaintiff sustained a similar loss of $12,309.29; that it was unable to designate the specific employees causing it; that it was not discovered until on or about January 19, 1932, and that notice was given and proof thereof submitted within the required time. Judgment was prayed in the sum of $2,500, the face of the bond of 1930.

In addition to a general denial, the defenses were that plaintiff failed to give notice and submit proof of the losses within the time provided in the bonds; that plaintiff took semiannual inventories of its stock of merchandise on hand and had sufficient knowledge to put it on notice of shortages if they existed, and that by the exercise of ordinary care and prudence it could have discovered any loss within six months after it occurred and could have prevented further embezzlements.

A verdict was returned for plaintiff in the sum of $10,000. Judgment was rendered for that amount with interest thereon from July 18, 1932, the date on which the action was instituted. Defendant appealed.

Error is assigned upon the action of the court in admitting testimony detailing conversations had and statements made by some of the employees who participated in the embezzlements which extended over a period of many months. Three former employees testified with reference to the nature and extent of the scheme through which the embezzlements occurred; they described how merchandise was placed on trucks without invoices or delivery sheets, and how it was sold and the proceeds divided among employees; they named several warehousemen, truckers, and checkers who were parties to the scheme and repeated conversations had among them concerning the matter. In addition, a baker testified that for fourteen months he bought substantial quantities of misappropriated merchandise consisting of sugar and compound at less than half the regular price; that such purchases were made from four different truck drivers; that he sometimes made purchases daily and sometimes a week intervened between them; that truck drivers sometimes left as much as thirty sacks of sugar and eight, ten, or fifteen cans of compound at his place of business and later took it away; that he saw them endeavoring to dispose of cigars, soap, washing powder and canned goods for whatever price they could obtain; that some of the employees told him the merchandise was being abstracted through a concert of action among many employees and sold to various purchasers; that some of it was being stored in a building rented for that purpose; that one former employee was taking orders and making deliveries in his private automobile, and that they were each making from fifty to seventy-five dollars per day. The wife of that witness corroborated his testimony in many of its substantial parts. It is said that all of such testimony was mere hearsay, not part of the res gestæ and not binding on the defendant. It is unnecessary to determine whether statements made by an insured after the embezzlement or misappropriation has been completed and which relate to a wholly past transaction are admissible against the surety because we do not deal with such a situation. These conversations, declarations, and statements were contemporaneous with the acts and were illustrative of their nature and extent. They were made while the scheme of misappropriation was in process of execution. They bore directly upon the intent and purpose with which the employees wrongfully took the merchandise and they were a part of the res gestæ, even though in some instances the employees were neither on the premises nor engaged in their work at the time, and in some instances they related to past acts in the prolonged series of abstractions. Guarantee Co. v.

444

Phenix Ins. Co. (C.C.A.) 124 F. 170; United State Fidelity & Guaranty Co. v. Bank of Thorsby (C.C.A.) 46 F.(2d) 950; Scovill Manufacturing Co. v. Cassidy, 275 Ill. 462, 114 N.E. 181, Ann.Cas.1918E, 602; Bank of Oak Ridge v. Duncan, 328 Mo. 182, 40 S.W.(2d) 656; Piggly Wiggly Yuma Co. v. New York Indemnity Co., 116 Cal.App. 541, 3 P.(2d) 15; Fort Scott Building & Loan Ass'n v. McAfee, 135 Kan. 355, 10 P.(2d) 851.

■ The court admitted in evidence a compilation or summary of shortages in thirty-five of the commodities embezzled, including sugar, compound, crisco, coffee, soap, oil, sardines, tobacco, cigarettes, and snuff. We are told that the evidence was not admissible because there was not sufficient proof to establish the authenticity and correctness of the records, files, and data from which it was prepared. The method of making and keeping the books and records was shown. They were made currently in the daily routine of the business and were relied upon as being correct; and their reasonable accuracy was fairly established. The two employees who made the compilation from the records testified to the correctness of their respective parts of it; and a certified public accountant employed to audit the books made certain tests and found it to be substantially correct. Of course, it was subject to impeachment by the books and records, but that was not done. Soon after plaintiff first learned that abstractions had occurred, it invited defendant to examine its books and records covering the period of investigation for the purpose of ascertaining the extent of the losses and the invitation was renewed at the time the proof of loss was submitted, but not accepted. The books and records were available to defendant for almost two years prior to the trial; still it failed to examine them, made no effort to determine whether losses had occurred, and offered no proof at the trial. The point urged that the compilation was inadmissible is without merit and need not be further discussed. Neither was the testimony of the auditor inadmissible. Ordinarily books and records are the best evidence, but it is well established that a qualified expert may examine voluminous or intricate books and records and for the convenience of the court and jury give a summary of their contents, if their authenticity is established and they are available for desired use

in cross examination. Hooven v. First Nat. Bank, 134 Okl. 217, 273 P. 257, 66 A.L.R. 1203; Butler v. United States (C.C.A.) 53 F.(2d) 800.

■ The argument that plaintiff failed to bring itself within the provision in the bond relating to group loss cannot avail. That provision is that if a group of employees cause loss and plaintiff is unable to designate the specific employee or employees, it shall nevertheless be indemnified, but the aggregate liability shall not exceed the face of the bond. Plaintiff established a concert of action among its employees and it identified many who were parties thereto, but it manifestly could not segregate and specify the amount of loss any one of them caused. The provision clearly applies to such a situation; otherwise it is meaningless and has no place in the bond.

It is contended that the court should have instructed a verdict for the defendant because the evidence merely showed inventory losses or shortages. There was direct testimony that employees embezzled merchandise; that such embezzlements covered many months, and that large quantities were wrongfully taken and sold. The testimony fairly established that the existing shortages resulted from criminal acts of the employees. The inventory tended to corroborate the testimony of the former employees and it established the extent of the shortages.

■ Complaint is made of the instructions to the jury. It is doubtful whether the question is reviewable. At the conclusion of the instructions, the court inquired whether counsel desired anything further. In response, counsel for defendant requested the court to instruct the jury as to the force and effect of the rider attached to the bond of 1930. Nothing was said which indicated what the jury should be told respecting the matter. After some discussion the court stated that no relief was asked under that rider, to which counsel replied that it was a part of the bond and was the limit of liability, that is the greatest amount of all the bonds. A general exception was then taken to the instructions with respect to the rider. No requested instruction was tendered, the kind desired was not outlined, and none was given. The rule which is applicable was stated in Order of United Commercial Travelers v. Greer (C.C.A.) 43 F.(2d) 499, 502, as follows: "The case is one peculiar-

ly appropriate for the application of the rule of this court that places the burden upon counsel to direct the attention of the trial court specifically to claimed errors in the charge, and to assist by a correct statement of the matters complained of. If counsel had pointed out his objections to the definition of the word, or had supplied a more accurate definition, the charge could have been then and there corrected. Having failed to do so, a reversal should not now be predicated thereon." But what of the merits of the contention? It is said that under the language of the rider the earlier bond of $10,000 was terminated and canceled in toto on October 1, 1930, including all rights to past and future losses; that all losses which occurred during the currency of the bond of 1929 and which were discovered after its termination were by the provisions of the rider attached to the bond of 1930 recoverable only under that bond. The rider in question applies only to shortages which occurred during the currency of the bond of 1929 and which were discovered more than two years after that bond terminated. In other words, it applies exclusively to losses which were sustained prior to October 1, 1930, and which were not discovered until after October 1, 1932. Maryland Casualty Co. v. First National Bank (C.C.A.) 246 F. 892; London & Lancashire Indemnity Co. v. People's National Bank (C.C.A.) 59 F.(2d) 149. There were no such shortages. All shortages were discovered before October 1, 1932; plaintiff did not seek recovery upon that rider, and the court was right in not submitting the question of its effect to the jury. Furthermore, defendant argues that when the rider is rightly construed, the total liability can in no event exceed $10,000. That is the amount of the verdict, and therefore it is difficult to perceive prejudice.

Now as to the interest on the judgment, formal proof of loss with demand for payment was submitted on May 12, 1932. The policies in suit provide that the insurer shall have two months after submission of such proof and demand within which to make its investigation and that no suit shall be filed during that time. This action was filed on July 18, 1932, more than two months after the claim was submitted and the court allowed interest from that date. Section 9959, O.S.1931 provides: "Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt." The cases of City of Chickasha v. Hollingsworth, 56 Okl. 341, 155 P. 859; St. Paul Fire & Marine Ins. Co. v. Robison, 72 Okl. 269, 180 P. 702, and American Eagle Fire Ins. Co. v. Lively, 142 Okl. 246, 286 P. 797, are relied upon to sustain the contention that interest should be allowed from the date of the judgment, not the institution of the suit. The construction of a state statute by the Supreme Court of the state is binding upon this court, but the cases referred to and others were reviewed in Concordia Ins. Co. v. School District, 282 U.S. 545, 51 S.Ct. 275, 75 L.Ed. 528, a suit to recover on a fire insurance policy, and it was held that interest should be allowed from the date on which the obligation to pay arose. The basis of the decision is that where the fair value of the property lost is susceptible of ascertainment with reasonable certainty, interest is properly allowed under the statute from the date on which the duty arose to make payment. Following the rule there announced, this court upheld the allowance of interest on damages from the date of breach of a contract to drill an oil well. Continental Oil Co. v. Fisher Oil Co. (C.C.A.) 55 F.(2d) 14. The property converted here consisted of sugar, compound, coffee, soap, tobacco, cigarettes, and other staples, the value of which was easily ascertainable with reasonable certainty. The parties stipulated that the question of interest upon any verdict which might be returned should be determined by the court and not the jury, and the court had authority to reserve and determine it. Whale v. Rice (Okl.Sup.) 49 P.(2d) 737. Defendant was liable for interest from sixty days after the submission of the claim and that was prior to the institution of the suit.

Other questions argued are insubstantial. The judgment is affirmed.