## SOVEREIGN CAMP W. O. W. v. WRIGHT.

No. 28110.   Dec. 20, 1938.

Rehearing Denied Feb. 7, 1939.

Rainey T. Wells, J. M. Sturdevant, and J. B. Moore, for plaintiff in error.

Williams & Williams, for defendant in error.

RILEY, J. This is an action commenced by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error to recover on a certificate of insurance issued to Thomas Wright, in which plaintiff is the beneficiary.

Insured was riding in a freight car of a freight train. The car was loaded with oil well casing. By a sudden shift of the oil well casing in the car, Wright received injuries which caused his death some months later. The certificate was in force at the time of the injury and death. By the terms of the certificate of insurance, the constitution and by-laws of the association were made a part of the contract of assurance. The by-laws contained a provision that:

"If a member dies * * * in consequence of the violation of the laws of the state or of the United States or of any other province or nation * * * the certificate shall be null and void and of no effect; and all moneys which have been paid and all rights and benefits which have accrued on account of the certificate shall be absolutely forfeited without notice or service."

Defendant pleads as a defense said provisions, and alleges that the insured died in consequence of the violation of the laws of the state of Oklahoma, particularly section 2579, O. S. 1931, which provides:

"Any person, other than a railway employee in the discharge of his duty, who, without authority from the conductor of the train, rides or attempts to ride on top of any car, coach, engine or tender, on any railroad in this state, or on the draw-heads between the cars, or under cars or truss-rods, or trucks, or in any freight car * * * shall be guilty of a misdemeanor."

Plaintiff replied by general denial. A jury trial being waived, the cause was tried without a jury, resulting in a finding and judgment for plaintiff, and defendant appeals.

The assignments of error relied upon are presented under the proposition that:

"The death of the insured was due to and in consequence of the violation of the laws of the state of Oklahoma, by reason of which, all rights and benefits accruing under the certificate of insurance were abso-

lutely forfeited, and the beneficiary cannot recover."

Defendant cites a number of cases holding that such provisions in an insurance policy are valid, but the real question in this case is whether under the record it must be held as fact that insured did die in consequence of the violation of the state law, viz., sec. 2579, supra.

This defense is an affirmative one, and the burden is upon defendant to establish the same.

The contention of defendant is that the evidence conclusively shows that the insured did die in consequence of the violation of said statute.

Plaintiff contends that there was no competent evidence even tending to establish the defense.

The evidence does conclusively show that insured was riding in a freight car, a part of a freight train, at the time he was injured. The question is, Does the evidence conclusively show that he was riding in said car in violation of law?

It may be noted that the statute does not make it unlawful, in any case, for a person other than an employee of a railway company to ride in a freight car. It is made unlawful only in the event that he does so without "authority from the conductor of the train."

The trial court found generally in favor of plaintiff, and this, of course, included a finding against defendant on the issue presented. This requires an examination of the evidence.

It appears from the record that Jack Griffin, a cousin of insured, was riding with Wright in the freight car. He was offered as a witness for defendant and his testimony is the only evidence in the record going to the question in issue. His testimony on this question is brief and we quote it in full as follows:

"Q. Did you know Tommy Wright during his lifetime? A. Yes, sir. Q. Are you related to him? A. First cousins. Q. Were you with him the night of May 20, 1936? A. I was. Q. Where were you? A. I thought it was Pierson switch, that is not the name mentioned in that statement. It is Pierson switch, one mile east of Pauls Valley. Q. Were you on a train? A. A Santa Fe freight train. Q. What kind of a car were you riding in? A. We were riding in a big steel gondola. Q. What do you mean? A. Something like a coal car only it is steel and ridged. Q. Was it an open car? A. It is open, the same height all the way round.

Q. It is a freight car? A. Yes, sir. Q. Was there any freight in there at the time? A. Ten inch oil field casing. Q. Was Tommy riding with you at the time? A. He was. Q. Where were you traveling to and from? A. We got on the train at Shawnee and was coming here. Q. Did you pay any fare for riding on the train? By Mr. Williams (of counsel for plaintiff) : Objected to as being incompetent, irrelevant and immaterial. By the Court: Overruled. By Mr. Williams (of counsel for plaintiff) : Exception. Q. (By Mr. Moore) Did either one of you pay any fare for riding the train? A. No, sir. Q. Did you have permission from any railway officials to ride on the train? By Mr. Williams (of counsel for plaintiff) : Objected to as being incompetent, irrelevant and immaterial. By the Court: Overruled. By Mr. Williams (of counsel for plaintiff) : Exception. A. No, sir."

We are urged to reverse the trial court upon the ground that the evidence conclusively shows that the insured was violating said provision of the law of the state and died in consequence thereof. To do so we must hold as a matter of law that a conductor is included in the term "officials of a railway company." Here the evidence shows at most that he did not have permission from any railway officials. We are cited to no case which holds that a conductor of a freight train is or is not a railway official. In the ordinary meaning of the term we would say that in speaking of railway officials, we do not think of conductors as being included. Such research as we have made leads us to the conclusion that persons employed by railroad corporations to operate trains, yardmasters, roundhouse foremen, etc., are not officers of such railroad companies.

In People·v. Dempsey, 167 N. Y. S. 810, it is held that under a statute penalizing officers of common carriers violating orders of the public service commission, a superintendent operating trains under instructions of a vice president and general manager was not an officer of the corporation.

In Barnett v. N. Y. Cen., etc., R. R. Co., 175 N. Y. S. 491, it was held that a yardmaster of a railroad company was not an officer of such corporation.

In Badger Oil & Gas Co. v. Preston, 49 Okla. 270, 152 P. 383, it was held that a field manager of the oil company was not an officer of the corporation. In pointing out the distinction between officers and agents of a corporation, the court cites Vardeman v. Penn. Mutual Life Ins. Co., 125 Ga. 117, 54 S. E. 66, and quotes therefrom:

"One distinction between officers and agents of a corporation lies in the manner

of their creation. An office is created by the charter of the corporation, and the officer is elected by the directors or the stockholders. An agency is usually created by the officers, or one or more of them, and the agent is appointed by the same authority."

There was no evidence that the insured, Thomas Wright, was riding in the freight car or on the train without authority from the conductor. The law does not presume that a person has committed a crime. The presumption is the other way. This being true, there was no evidence that Wright died in consequence of the violation of the laws of the state.

In what we have said we have assumed that in putting the question to the witness in the form it was put, viz:, "Did you have permission from any railway officials to ride on the train?" counsel meant to include Wright as well as the witness. Possibly he did so. But it will be noted that in the next preceding question relative to whether any fare was paid, counsel first put the question, "Did you pay any fare for riding on the train?"

Objection was made and the objection was overruled. Counsel then, before the witness answered, changed the form of the question to: "Did either one of you pay any fare for riding on the train?" The witness answered, "No, sir." Then followed the question and answer quoted above relative to permission of the railway officials. So, unless we conclusively assume that the question was intended to and did include both Wright and the witness, then there was no evidence even that Wright did not have permission from the railway officials. However, such permission would not have helped him, since the conductor is the only one named in the statute who could give authority so as to prevent the act of riding on the train from being a violation of the law.

Concluding as we have that defendant failed to prove the defense relied upon, we deem it unnecessary to discuss other propositions presented in the brief of plaintiff going to the question of causal connection between the alleged offense of insured and his injury.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and HURST and DAVISON, JJ., concur. CORN and GIBSON, JJ., dissent. WELCH and DANNER, JJ., absent.