## OTTERTAIL POWER CO. v. DUNCAN.
### No. 12533.

Circuit Court of Appeals, Eighth Circuit.
July 30, 1943.

Holton Davenport, of Sioux Falls, S. D., (Ellsworth E. Evans and Louis R. Hurwitz, both of Souix Falls, S. D., on the brief), for appellant.

George J. Danforth, of Sioux Falls, S. D. (George J. Danforth, Jr., of Sioux Falls, S. D., and George A. Rice, of Flandreau, S. D., on the brief), for appellee.

Before THOMAS and JOHNSEN, Circuit Judges, and VOGEL, District Judge.

VOGEL, District Judge.

This is an appeal from a judgment in favor of appellee entered in accordance with a jury verdict in an action for damages by reason of wrongful death. The case is appealed here on the ground that the trial court erred in refusing to direct a verdict for appellant and in denying appellant's motion for judgment non obstante veredicto on the ground that the decedent should have been held guilty of contributory negligence as a matter of law. For the purposes of the appeal it was conceded that there was sufficient evidence to support the jury findings as to appellant's negligence and as to damages.

The facts necessary to a determination of the question raised on appeal are as follows: At the time of his death the decedent was a minor of the age of fifteen years, residing with his parents in the City of Flandreau, South Dakota. The appellant was engaged in the business of generating, transporting and selling electrical power and energy, and in connection therewith operated and maintained a high voltage line which crossed the Big Sioux River, a

navigable stream, at a point near the outskirts of Flandreau. At the place of crossing the Big Sioux River the appellant's highline was following along a section line which, under the statutes of the State of South Dakota, was a public highway. At the place of crossing the river the distance between the poles supporting the highline was approximately 662 feet. In this distance over the river the appellant's highline, consisting of three wires carrying a voltage of 22,000, sagged at the lowest point to but 14 feet above the surface of the river. The river at this point was widened by reason of the installation of a dam and is sometimes referred to as the "mill pond". The mill pond is used by the public for fishing and boating and very infrequent sailboating and iceboating. The appellant's highline over the mill pond had been maintained in its described condition for a period of many years. The decedent and his boy companion, who was seventeen years of age, together purchased and rigged up a small boat, which they proposed using as a sailboat on the mill pond. The mast for the sailboat was of home construction and consisted of a pole with wires attached near the top and extending, one to each side of the boat and one to the bow. The mast measured 14 feet 7 inches. When loaded the boat sank somewhat into the water, thus reducing the height of the mast. The boys had sailed the boat but once prior to the day of the fatal accident. Both boys were aware that there was danger if the mast of the boat came into contact with the highline. An inspector of the appellant, while visiting at the decedent's home a few days prior to the accident, warned the decedent that it would be dangerous if the mast would not clear the highline. Both boys were active, out door lads, with considerable training as boy scouts, adept at hunting and in athletics. At the time of the accident the two boys started out into the mill pond, with the decedent sitting in the middle of the boat, with the guy wires of the mast directly in front of him, and his companion occupying the rear end, using the only paddle, which was the sole means of propelling and steering the boat. As they approached the boys did not know whether their mast would clear the highline at its lowest point. They were unable to tell whether the mast would clear until they were within about 15 feet thereof. The wind at their backs was strong. When they discovered the mast would not clear the decedent's companion, turned the boat toward shore and tried to get away by use of his paddle. As the boat turned it caught the wind sideways, getting its full effect, and was blown into the highline in spite of the efforts of the one paddling. The electric current from the highline passed down the guy wires, causing the decedent's death.

The appellant's maintenance of the highline in the condition described was in violation of the following statutes: "Telegraph, telephone, electric lines across public highways: regulation; penalty. It shall be unlawful for any person owning or operating any telephone, telegraph, or electric line, or any part of such line in this state to extend any telephone, telegraph, or electric wire, any part of which shall be less than eighteen feet from the ground, over or across any public highway. No such person shall be entitled to collect damages from any person who shall cut, break, remove, or otherwise destroy any such telephone, telegraph, or electric wire over or across a public highway if any part of the same is at any time less than eighteen feet from the ground; provided that nothing contained in this section shall be construed to exempt anyone owning or operating any telephone, telegraph, or electric line in this state from liability for any damage or injury which anyone may sustain by reason of the faulty or negligent construction or maintenance of such telephone, telegraph, or electric line. Any person owning or operating any telephone, telegraph, or electric line in this state who shall willfully construct any telephone, telegraph, or electric wire over or across any public highway in this state, any part of which shall be less than eighteen feet from the ground, shall upon conviction be punished by a fine not exceeding one hundred dollars or by imprisonment in the county jail not exceeding thirty days." Section 13.1624, SDC 1939.

"Electric telephone or telegraph wires over highways: conditions; removal. It shall be unlawful for any person, firm, association, or corporation owning or operating any telephone, telegraph, or electric line, or any part of such line in this state, to extend any telephone, telegraph, or electric wire, any part of which shall be less than eighteen feet from the ground, over or across any public highway. No such person, firm, association, or corporation shall be entitled to collect damages from

any person who shall cut, break, remove, or otherwise destroy any such telephone, telegraph, or electric wire over or across a public highway if any part of the same is at any time less than eighteen feet from the ground. Nothing contained in this section shall be construed to exempt anyone owning or operating any telephone, telegraph, or electric line in this state from liability for any damage or injury which anyone may sustain by reason of the faulty or negligent construction or maintenance of such telephone, telegraph, or electric line." Section 28.1004, SDC 1939.

As indicated, we are here concerned only with the contributory negligence of the decedent or his companion. The case was tried upon the theory that the two boys were on a joint adventure or common enterprise and, therefore, the negligence of the decedent's boy companion, if any such negligence existed, was attributable to the decedent.

The trial court was of the opinion that the question of the contributory negligence of the boys was one for the jury and, accordingly, denied appellant's motions. Ordinarily the question of contributory negligence is one for the jury. The Supreme Court of South Dakota in the case of Jensen v. Juul et al., 66 S.Dak. 1, 278 N.W. 6, 9, 115 A.L.R. 1280, in determining the question of whether from the facts of the complaint plaintiff's intestate was contributorily negligent as a matter of law, stated: "We are, of course, to be guided in the determination of this contention by the well-settled law that the question of contributory negligence is ordinarily a question of fact for the jury; that contributory negligence is a question of law only when the court is impelled to say 'from all the facts that reasonable men could not differ in opinion as to the existence of negligence."

Contributory negligence, as a matter of law, exists only where the facts are such that a determination thereof could not cause doubt or question in the minds of reasonable men. One of the purposes of a jury of twelve persons is to have such persons, acting as a group, determine matters that might be of doubt in the mind of one or of another. It is only where the facts are so persuasive that reasonable men, exercising impartial and sound judgment, could not differ that a court is justified in pre-empting a jury's prerogatives by verdict directions or judgment notwithstanding the verdict.

In the instant case we are dealing with the actions of two boys, one fifteen and the other seventeen. They were aware of the danger of coming into contact with the appellant's highline. The decedent had been warned of such danger only a few days before the accident. But they had no intention of coming in contact with the highline. They did not voluntarily touch it. They were not trespassers. They were in a place where they had a right to be, and where the appellant had a right to expect them to be. They were engaged in the pursuit of pleasures known to boys of their age. Their ingenuity and energy had provided them with a makeshift sailboat to traverse the waters of the mill pond. The mill pond had been used by the public, adult and child, for many years. The appellant was in definite violation of the law in maintaining its highline at less than 18 feet above the surface of the water of the mill pond. The boys admittedly did not know if the mast of their boat would contact the highline. With the boat loaded there would be but a matter of a few inches difference between the height of the mast and the height of the highline above the water, so that it would be difficult to tell whether contact would be made without going to a point very near to the low part of the highline. It is patent that if the highline had been maintained at such height as was provided for by law no contact could have been made and the boys could have sailed under the highline in perfect safety. Can we say, then, that, as a matter of law, these boys are to be charged with contributory negligence in venturing near enough to determine whether or not such contact would be made? Should the boys have known that to have approached so close would have subjected them to the force of the wind, so strong when they turned broadside that they could not control their direction? Were they negligent in turning sideways, or should they have attempted to paddle directly backward to the point of their approach? Did their actions in the emergency constitute negligence? Under the facts herein these are all questions for jury determination. Reasonable men might very readily differ as to the answers. Clearly the trial court was correct in submitting the case to the jury.

The judgment will be sustained.