**WATERS v. NATIONAL LIFE & ACCI-DENT INS. CO., Inc.**

**Civil Action No. 1437.**

District Court, N. D. Oklahoma.

Aug. 14, 1945.

958

Marvin T. Johnson, of Tulsa, Okl., for plaintiff.

Valjean Biddison and Floyd L. Rheam, both of Tulsa, Okl., for defendant.

SAVAGE, District Judge.

Edgar J. Waters, who died on July 18, 1944, was covered by a life insurance policy issued by National Life & Accident Insurance Company for $5,000 payable to Rubie E. Waters, with an additional equal sum payable under the double indemnity clause in the event of death resulting from accidental means. The company paid the face amount of the policy and this action was brought to recover under the double indemnity provision.

Death was caused by accidental electrocution. By the terms of the policy the company was not to pay double indemnity if the injury causing death was "sustained in connection with violation of law by the insured." Conceding the accidental death, the company contested liability on the ground that death was in connection with violation of law and assumed the burden of proof. The plaintiff offered no evidence. The Court reserved ruling on defendant's motion for an instructed verdict. The verdict of the jury was for plaintiff, and the cause is now before the Court on defendant's motion for judgment notwithstanding the verdict.

Waters owned and occupied a suburban home a few miles from Tulsa, Oklahoma. He had there a barn, feed lot, two horses, and a few turkeys. He lived alone, having been divorced from his wife, Rubie E. Waters, the beneficiary of the policy. Mrs. Myers, a neighbor, frequently observed him about the premises. She saw a light in the house and heard his radio at night. She noticed him the evening before his death watering the turkeys and livestock, clad in his bathing suit.

Responding to a telephone call disclosing the discovery of the body, deputies in the sheriff's office went to the Waters' residence about seven o'clock, P. M. They found the body, clad only in shorts, lying face down on the cement floor of a room in the barn. One hand was grasping the globe and socket end of an electric drop cord. The other end of the cord was plugged into a wall socket in the room. The body was burned where it lay across the cord and fingers of the hand holding the broken globe and socket were also burned. The parties agree that death was occasioned by accidental electric shock. No effort was made to fix the exact time of death.

The room was about twelve feet square, had no windows and the only door opened into the interior of the barn. The electric lights with which the room was equipped were not burning. The officers found in the room a 100 gallon, unlicensed still; pasteboard cartons containing 100 gallon jugs filled with non-taxpaid corn whisky; a 40 gallon jar three-fourths full of non-taxpaid whisky; a jar placed under the spigot of the still filled with corn whisky; a 22 caliber rifle, and nothing more.

The still was set up and in actual operation. The room was "hot and steamy." One of the officers cut off the gas feeding the fire. Water was running through a hose into the cooling barrel. The barrel had overflowed and water covered the floor. The container receiving whisky from the spigot of the still had likewise overflowed. Several barrels of mash were located in the loft of the barn immediately above the still room. Nine gallons of whisky were found in the house.

Operation of the unlicensed still and the manufacture and possession of non-tax-paid whisky constituted violations of both state and federal law.

The motion for judgment notwithstanding the verdict should be sustained if defendant was entitled to favorable action on its motion for a directed verdict. Federal Rules of Civil Procedure, rule 50(b), 28 U.S.C.A. following section 723c; Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L. Ed. 1636. The Court must view the evidence in the light most favorable to plaintiff and give to the plaintiff the benefit of every legitimate inference to be drawn therefrom. But if upon such survey of the evidence, the facts are found to be so persuasive that reasonable men, exercising sound and impartial judgment, could but agree that the injury causing death was sustained in connection with violation of law by the insured, the Court must set aside the verdict of the jury and enter judgment for the defendant. Brady, Adm'x, v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Ottertail Power Co. v. Duncan, 8 Cir., 137 F.2d 157; Baltimore & Ohio R. Co. v. Muldoon, 3 Cir., 102 F.2d 151; Stutler v. Heflin et al., D.C.D.C., 46 F.Supp. 539.

While no eyewitness was available to say that Waters was preoccupied with the operation of the still at the moment of death, the undisputed facts heretofore detailed lead irresistibly to such conclusion. He alone occupied the premises. His body was found on the floor of the room in which the still continued to function for an indeterminate period of time after death. A gas fire was burning under the boiler. Water was running into the overflowing cooling barrel. Whisky was flowing from the spigot of the still into an overflowing receptacle. A 40 gallon jar was partially filled with whisky. He was barefooted and wore nothing but shorts, raiment well adapted for occupancy of a small hot room on a July day in Oklahoma. Waters must have been engaged at the time of death in the operation of this still in violation of law.

But the plaintiff argues that the company has a further burden of proving that the violation of law was the direct and proximate cause of death, and that a causal connection between operation of the still and death is not a necessary inference from the facts in evidence. Defendant on the other hand asserts that the insured at death occupied the status of a law violator and that coverage was suspended while he was thus engaged.

The decisions of the Supreme Court of Oklahoma must first be examined, as directed by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, but that court has not settled the question. In both Mid-Continent Life Insurance Co. v. Dunnington, 177 Okl. 484, 60 P.2d 1047 and Sovereign Camp, W.O.W. v. Wright, 184 Okl. 301, 86 P.2d 977, cited by plaintiff, the court held that the insurer had failed to prove the alleged violation of law and it therefore failed to reach the problem of causal connection.

Authorities from other jurisdictions have been cited which support both contentions. Careful analysis of the cases discloses that the conflict is more apparent than real. In the main, the apparent diverse views are compelled by the varying provisions of the contracts under consideration. Quite generally courts have construed contracts relieving insurance companies from liability for death "by reason of" or "resulting from" or "in consequence of" some particular activity to require proof of causal connection between the inhibited conduct and death, as the language clearly compels. Travelers Insurance Co. v. Seaver, 19 Wall. 531, 86 U.S. 531, 22 L. Ed. 155; Supreme Lodge, K. P. v. Beck, 181 U.S. 49, 21 S.Ct. 532, 45 L.Ed. 741; Interstate Life Assurance Co. v. Dalton, 6 Cir., 165 F. 176, 23 L.R.A.,N.S., 722; Bloom v. Franklin Life Insurance Co., 97 Ind. 478, 49 Am.Rep. 469; Hancock Mutual Life Insurance Co. v. Long, 285 Ky. 757, 149 S.W.2d 510. And generally, too, the courts have read policies absolving the insurer from liability "while" or "when" the insured is under the influence of narcotics or of intoxicating liquor, or in military or naval service, or participating in war or riot, or engaged in violation of law as exonerating the insurer if death occurs while the insured occupies the forbidden status. Order of United Commercial Travelers of America v. Tripp, 10 Cir., 63 F.2d 37; Order of United Commercial Travelers v. Greer, 10 Cir., 43 F.2d 499; Flannagan v. Provident Life & Accident Insurance Co., 4 Cir., 22 F.2d 136; Provi-

dent Life & Accident Insurance Co. v. Eaton, 4 Cir., 84 F.2d 528; Bradshaw v. Insurance Co., 107 Kan. 681, 193 P. 332, 11 A.L.R. 1091. It has been said that:

" * * * if the parties to a contract of insurance provide that same shall not cover a given risk while insured is engaged in certain conduct, or occupying a certain status thought to involve an increase of hazard, there would seem to be nothing for the courts to do but to enforce their contract as they have made it. * * *" Hutto v. Atlantic Life Insurance Co., 4 Cir., 58 F.2d 69, 71.

■ Here the policy permits the company to escape liability if the injury causing death was sustained "in connection with" violation of law. This language suggests the necessity for a causative connection between the violation of law and death, although it falls short of requiring a showing that the violation of law was the proximate cause of death. It was thus decided by the Supreme Court of Georgia in National Life & Accident Insurance Co. v. Sutherland, 64 Ga.App. 72, 12 S.E.2d 183, 187, where the court, interpreting this identical policy, said:

" * * * the insurance company is exempted from liability if it is shown that the insured was engaged in a violation of law, not necessarily the proximate cause of his death, but one which had some causative connection with his death or from which the death of the insured was a reasonable consequence. * * *"

■ The question next arises as to whether a causal connection between the operation of the still and the death of Waters is the only reasonable inference to be drawn from the evidence. Death came through use of the electric drop cord. With the still in actual operation and whisky pouring from the spigot in a windowless room, it seems certain that Waters was using the artificial light or intended to use it in connection with and in furtherance of his unlawful activity. It is highly improbable that his attention was diverted from the unlawful enterprise at the moment of death. The material and equipment in the room was limited to that useful in the illicit manufacture of whisky. The absence of feed, garden tools and the like from the room negatives any suggestion that the light was in his hand for any lawful purpose. An assumption that the violation of law had no causative connection with the insured's death finds no support in the evidence. Men of reason must agree that death came to Waters while engaged in the unlawful operation of a still and that there was a causal connection between such violation of law and his death.

The reference by Justice Cardozo in Travelers Protective Association of America v. Prinsen, 291 U.S. 576, 54 S.Ct. 502, 78 L.Ed. 999, to cases holding that the proscribed activity must aggravate the hazard in order to enable the insurer to avoid liability has not been overlooked. But with a causal connection demonstrated between the forbidden conduct and death, it seems inappropriate to speculate as to whether such conduct increased the risk.

The motion for judgment notwithstanding the verdict is sustained, the verdict of the jury set aside and judgment entered for defendant.