CONSOLIDATED EXPRESS, INC., demandante y recurrente, *v.* MARYLAND CASUALTY COMPANY, demandada y recurrida.

*Número:* R-73-206        *Resuelto:* 16 de septiembre de 1974

*Harry B. Llenza,* abogado de los recurrentes; *Agrait, Otero & Oliveras,* abogados de la recurrida.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

Para protegerse de la rapacidad de sus propios empleados, la recurrente Consolidated Express, Inc., una compañía porteadora de mercancía, adquirió de la recurrida Maryland Casualty Company, una fianza o seguro de fideli-

dad(1) en la que ésta se obligó, sujeto a las condiciones del contrato, "a indemnizar a su asegurada por la pérdida de dinero y otra propiedad que ésta sufra por acto o actos fraudulentos o deshonestos cometidos por cualquiera de sus empleados, individualmente o en colusión con otros." Al surgir indicios de que le estaban robando en el almacén, la Consolidated contrató un agente encubierto privado quien haciéndose pasar como empleado, durante los meses de febrero a abril de 1970 presenció los hurtos y la partición del dinero producto del pillaje, lo que dio lugar a la formulación de unas 40 denuncias y al arresto de 13 empleados por el delito de hurto, unos en grado mayor y otros en menor. A la fecha del juicio, 12 empleados habían sido convictos al admitir su culpabilidad. Mediante evidencia oral y documental y con la intervención de una firma de contadores designada por la fiadora Maryland Casualty Company quedó fijado en $43,109.20 el valor total de la mercancía confiada por distintas personas a la porteadora recurrente y desaparecida de su almacén. (2) Cuando la

---

(1) "A tenor de la regla general de interpretación estricta de las ambigüedades en los contratos de seguros en favor del asegurado, está bien establecido que las fianzas y contratos que garantizan la fidelidad de empleados, fiduciarios, oficiales, etc., cuando se otorgan por lucro y en el curso de los negocios con tal fin, son esencialmente contratos de seguro en vez de contratos de estricta y pura fianza, y deberán interpretarse como contratos de seguro, de modo que los derechos y obligaciones de las partes se rijan, en caso de duda o ambigüedad en cuanto al sentido, por la regla de seguros de interpretación liberal a favor del asegurado y de la garantía adquirida en vez de la regla 'strictissimi juris' que gobierna los derechos de garantizadores o fiadores corrientes constituidos como tales sin causa pecuniaria." Couch *On Insurance*, 2d, Tomo 13, sec. 46:17.

(2) Dicha cuantía fue aceptada por estipulación oral en el curso del juicio, reflejada a las págs. 34 y 35 de la transcripción de evidencia, así:
"Lic. Llenza:

. . . . . . .

P—¿Entonces todas esas reclamaciones de los exhibits tres, cuatro, cinco, seis y siete a qué cantidad suman todas?
Testigo:
R—De memoria no la sé, son cuarenta y tres mil y pico de dólares.
Lic. Agrait:
Aceptamos que son cuarenta y tres mil ciento nueve dólares con

Consolidated le reclamó dicha pérdida a su aseguradora Maryland Casualty Company ésta negó responsabilidad y prevaleció en el tribunal de instancia que al desestimar la demanda adujo 5 fundamentos, a saber:

(1) Que la demandante Consolidated no descargó su obligación de "peso de la prueba" (Art. 470, Código de Enjuiciamiento Civil—32 L.P.R.A. sec. 1971—);

(2) Que la póliza tiene un límite de $10,000 por los actos de cada empleado y la beneficiaria Consolidated no pudo atribuir cantidades específicas hurtadas a cada empleado;

(3) Que limitada a $50 por embarque la responsabilidad de la porteadora frente al consignatario según texto de las cartas de porte (*bills of lading*), la prueba no estableció con la necesaria certeza cuál sea su pérdida real en cada caso afectado por la sustracción;

(4) Que la porteadora asegurada violó la Sec. 6 de las Condiciones de la póliza, al permitir hurtos por tres meses, sin evitarlo;

(5) Que su reclamación está excluida por la Sec. 2 de dichas Condiciones limitativas del seguro, ya que su importe fue determinado por el método de inventario. Al así resolver incidió el Tribunal Superior.

---

veinte centavos ($43,109.20). Ya lo revisamos con un contable.

Lic. Llenza:

P—¿Y la misma pregunta anterior? ¿Todo se notificó a la Maryland Casualty Company?

Testigo:

R—Sí, señor.

Lic. Agrait:

Aceptado.

Lic. Llenza:

P—¿Se le sirvió copia de todos los documentos a la Maryland?

Lic. Agrait:

Dentro del término que dice la póliza.

Hon. Juez:

Bueno . . . ."

(1) La evidencia ofrecida por la recurrente estableció una práctica de ratería y pillaje en su almacén por parte de empleados de cuya honestidad respondía la fiadora y dentro de esas circunstancias es racionalmente imputable a la deshonestidad de dichos empleados la desaparición de toda la mercancía, aun cuando no haya prueba directa y particularizada de la clase, valor y naturaleza de los bienes hurtados por cada empleado en cada fecha. Cumplió la demandante con establecer mediante evidencia circunstancial un caso *prima facie* de pérdida de la cantidad cierta de $43,109.20 por acción deshonesta de sus empleados y satisfizo la exigencia del Art. 470 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 1971) que impone al demandante la obligación de probar su caso. Consolidated no venía obligada a excluir toda posibilidad de que la pérdida de mercancía en su almacén se debía a actos de personas extrañas a la asegurada. Surge de la prueba una razonable inferencia de que toda la mercancía desaparecida lo fue por acción de los empleados de Consolidated, y este Tribunal ya ha aceptado que basta la evidencia indirecta cuando mueve la razón del hombre hacia la inferencia lógica. "Sabemos que la parte que sostiene la afirmativa en la cuestión deberá presentar la evidencia para probarla. Arts. 1168, Código Civil, y 108 y 162, pár. 5, Ley de Evidencia. Pero, por regla general, la ley no exige aquel grado de prueba que, excluyendo la posibilidad de error, produzca absoluta certeza; porque tal prueba—asegura la propia ley—es rara vez posible. Sólo se exige la certeza moral, o un grado de prueba que produzca convicción en un ánimo no prevenido. No se tiene que probar el caso con exactitud matemática mediante evidencia directa, ni de modo concluyente, ni que produzca un grado tan perfecto de convicción que no admita la posibilidad de la prueba en contrario." *Murcelo* v. *H. I. Hettinger & Co.*, 92 D.P.R. 411, 426–427 (1965). *Rodríguez* v. *Ponce Cement Corp.*, 98 D.P.R. 201, 207 (1969).

Frente a la prueba de la asegurada correspondía a la ase-

guradora derrotar la reclamación con evidencia que asignara a no empleados el robo de mercancía (*Vda. de Delgado* v. *Boston Ins. Co.*, 99 D.P.R. 714 (1971)), sin que pudiera descansar en el hecho de que otras personas empleadas en otros negocios circulaban por áreas inmediatas al almacén. Con nuestra densidad poblacional, es necesariamente espesa la circulación de personas en todas las áreas de actividad del territorio nacional.

(2) No hubo evidencia del valor de la propiedad sustraída por cada uno de los empleados denunciados y convictos, como tampoco hubo prueba en cuanto a qué empleados en particular participaron en la serie de hurtos que hicieron montar la pérdida de mercancía a $43,109.20. Esa prueba particularizada es imposible en el tipo de riesgo cubierto por la aseguradora en que numerosos empleados deshonestos, en operaciones de pillaje realizadas a lo largo de un extendido e indeterminado período se organizan a manera de empresa para robar a su patrono. 9 Appleman, *Insurance*, sec. 5672. La propia fianza de fidelidad ha previsto esta situación en la sec. 4 de sus Condiciones limitativas al disponer que en tal caso[3] la responsabilidad total compuesta de la fiadora no excederá la cuantía estipulada en el inciso 3 de las "Declaraciones" que es $10,000.00. A falta de una clara identificación de empleados y cantidades sustraídas por cada uno, el contrato entre las partes no niega cubierta, sino que establece una especial limitada al concepto de total combinado (*aggregate*).

---

[3] El texto íntegro de dicha Sec. 4 en el idioma inglés de su redacción es el siguiente:

"Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss the Insured shall nevertheless have the benefit of this Bond, subject to the provisions of Section 2 of this Bond, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further, that the aggregate liability of the Underwriter for any such loss shall not exceed the amount stated in item 3 of the Declarations."

Couch *On Insurance*, 2d, Tomo 13, sec. 46:32; Appleman, *Insurance*, Tomo 9, sec. 5663; *Hartford Accident & Ins. Co.* v. *Collins-Dietz-Morris Co.*, 80 F.2d 441, 444; *Maryland Casualty Co.* v. *Clements*, 487 P.2d 437, 444.

■ (3) Como parte del contrato de transporte entre Consolidated y sus clientes consta impresa en toda carta de porte (*way bill*) una cláusula (⁴) que limita a $50 la responsabilidad de la porteadora en caso de pérdida o daño de la mercancía. Dicho pacto es materia extraña e irrelevante a la reclamación de Consolidated contra su fiadora que se rige por los términos del seguro, especialmente por la Sec. 5 de las Condiciones y limitaciones que cubre el valor de la mercancía irrespectivamente del concepto bajo el cual se halla ésta en poder de la asegurada. (⁵)

■ (4) La Sec. 6 de las Condiciones (⁶) y limitaciones de la póliza dispone que cesará su cubierta desde el momento en que el asegurado advenga en conocimiento de que el empleado ha cometido un acto de deshonestidad. Razona el tribunal de instancia que toda vez que Consolidated se mantuvo corrientemente enterada de los actos de pillaje según los revelaba la investigación del agente encubierto durante los meses de febrero a abril de 1970, la citada cláusula excluye su reclamación. Dicha conclusión es irreal. La asegurada no podía

---

(⁴)"The Company will not pay over $50.00 in case of any loss or damage, unless a greater value is declared and charges for such greater value paid subject to conditions set forth in published tariff and long form bill of lading. Shipper and consignee accept limitations of liability as set forth in Consolidated Express, Inc. published tariff."

(⁵)"Section 5. The insured property may be owned by the Insured, or held by the Insured in any capacity whether or not the Insured is liable for the loss thereof, or may be property as respects which the Insured is legally liable."

(⁶)"Section 6. The coverage of this Bond shall not apply to any Employee from and after the time that the Insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the Insured or otherwise, whether such act be committed before or after the date of employment by the Insured."

reclamar bajo la póliza hasta obtener una razonable certeza de que la desaparición de propiedad en su almacén era imputable a sus empleados y sólo entonces podía notificar a la aseguradora como era su obligación, bajo la Sec. 7 de las Condiciones (⁷) que había sufrido una pérdida cubierta por la póliza. Cuando la investigación dirigida al descubrimiento de la conducta deshonesta de los empleados cubiertos por un seguro de fidelidad no se extiende por tiempo mayor del razonable para lograr sus propósitos, la información que durante el curso de la pesquisa obtenga la asegurada no es de la naturaleza que haga el seguro inoperante bajo la citada Sec. 6. Para notificar la pérdida a la aseguradora no basta la desaparición de mercancía ni la simple sospecha de conducta deshonesta del empleado. Couch *On Insurance*, 2d Tomo 13, secs. 49:232–233. La investigación por el tiempo que se tomó la misma era necesaria para lograr un criterio bien fundado de que había ocurrido una pérdida cubierta por el seguro y para determinar la extensión de la misma. El conocimiento de los actos de hurto que excluye la cubierta del seguro es el conocimiento tolerado o en alguna forma consentido, no el que se obtenga mediante investigación encaminada a reprimir la práctica deshonesta y castigar a los ladrones.

(5) Se aduce como argumento final para negar cubierta en este caso que la asegurada Consolidated usó el método de inventario para determinar las pérdidas incurriendo al así actuar en infracción a la Sec. 2 de la póliza. (⁸) Evidente-

---

(⁷) "Section 7. Upon knowledge or discovery of loss under this Bond, the Insured shall: (a) give notice thereof as soon as practicable to the Underwriter or any of its authorized agents, and (b) file detailed proof of loss, duly sworn to, with the Underwriter within four months after the discovery of loss."

(⁸) "Section 2. This Bond does not apply to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of money or other property which the Insured can prove,

mente la exclusión se refiere a pérdidas sólo reflejadas por la práctica de un inventario. En este caso la asegurada determinó la cuantía total de pérdida aceptada por la aseguradora, mediante cotejo de la mercancía recibida en el almacén contra la entregada a los consignatarios, lo que constituye una verificación de propiedad desaparecida no necesariamente considerada "inventario". Mas la asegurada recurrente no dependió del recuento de órdenes y mercancía para determinar que había sufrido una pérdida sino que utilizó un agente encubierto que sacó a la luz los hurtos de propiedad por sus empleados. De modo que no sólo se comprobó la falta de mercancía sino que la evidencia fue suficiente para imputar dicha falta a la rapiña de los empleados. Vinculados éstos con la desaparición de propiedad por evidencia aparte de la contabilidad indicada, la misma Sec. 2 de la póliza dispone que la pérdida no quedará excluida del seguro al proveer: ". . . este párrafo no se aplicará a la pérdida de dinero u otra propiedad que sufra el asegurado por cualquier acto fraudulento o deshonesto de uno o más de sus empleados y que aquél pueda probar por evidencia independiente de los referidos cómputos [de inventario]." De no ser así habríamos de abordar la validez de una cláusula que niega al asegurado un medio asequible y confiable para establecer sus pérdidas derivadas del suceso contingente y riesgo contra el cual pagó y obtuvo una póliza de seguro.

*Se revocará la sentencia revisada y en su lugar se dictará otra declarando con lugar la demanda y disponiendo que la aseguradora Maryland Casualty Company pague a su asegurada Consolidated Express, Inc., la cantidad de $10,000, las costas y $2,000 por concepto de honorarios de abogado.*

---

through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees."